ROBERT & T. L. KNIGHT v. E. B. HOUGHTALLING and others.

*Evidence—Address of Counsel—Abuse of Privilege—Fraud— Rescission—Statute of Limitations—Judgment under Code.*

1. Where the charge is that the execution of a written contract to purchase land was procured by fraudulent representations it is competent to show, in a court administering both law and equity, the accompanying acts and declarations of the parties *dehors* the writing, as illustrating and forming a part of the transaction.

2. Where such instrument and declarations are duly in evidence, it is competent to ask a witness to the transaction who was to pay the expenses of giving possession of the land; his answer will not be necessarily the statement of an opinion, or conclusion of fact.

3. It is also competent to show that other articles were sold at the same time with the land, and the price thereof included in the same consideration, as bearing on the question of fraud and indicating the inducements held out by the vendors to effect the trade.

4. It being alleged by the defendants that they were inveigled by the plaintiffs into the purchase of said land by false and fraudulent representation as to its area, advantages of situation, &c., it is competent to show that a hand-bill was exhibited by the agent of the plaintiffs' under their directions, containing such misrepresentations; and it is also competent to put such hand-bill in evidence.

5. Declarations of a joint contractor, shortly after the agreement was made, are evidence of its terms against his co-contractors.

6. An admission in writing, under section 331 of the code of civil procedure, that a letter is genuine does not preclude comments by counsel as to the truth of its contents, suggested by its appearance, the fact of its being written by an amanuensis, &c.; but if such comments were improper, exception thereto, in order to be available, on appeal, must be made before the court has given the case to the jury.

7. False representations, reasonably relied on, and inducing a contract, vitiate the agreement so effected.

8. An expenditure by the defendants of their own means, to put themselves in the condition in which the plaintiffs should have placed them, will not condone the fraud of the plaintiffs, so as to disentitle the defendants to relief; nor will *all* relief be denied because the plaintiffs have made payments in part performance of their contract after the discovery of the fraud.

2

9. A party entitled to rescind a contract for the purchase of land on the ground of fraud must declare his intention as soon as fraud is discovered; and when sued by the other party, after a number of years, for the foreclosure of a mortgage to secure the purchase-money, he cannot for the first time ask to rescind, but can only ask to deduct from his debt an amount sufficient to repair the consequences of such fraud.

10. The defendants' right to such reimbursement is not barred by the statute of limitations applicable to an ordinary action for *deceit*, as their remedy is affected by *retaining* part of the money due by an unexecuted contract, the consideration for which has failed *pro tanto*.

11. Under the Code practice a party is not restricted to the specific relief demanded by him, but may have any additional and different relief which the pleadings and facts proved show to be just and proper.

(*Hill* v. *Brower*, 76 N. C., 124 ; *Nance* v. *Elliott*, 3 Ired. Eq., 408 ; *Ransom* v. *Shuler*, 8 Ired. Eq., 304 ; *Pettijohn* v. *Williams*, 1 Jones, 145 ; *McDowell* v. *Sims*, 6 Ired. Eq., 278 ; *Tomlinson* v. *Savage*, *Ib.*, 430 ; *Alexander* v. *Utley*, 7 Ired. Eq., 242 ; *Earl* v. *Bryan*, Phil. Eq., 278 ; *Whitfield* v. *Oates*, 6 Jones Eq., 136, cited and approved.)

CIVIL ACTION, tried at Fall Term, 1880, of GRANVILLE Superior Court, before *Eure, J.*

This is an action to foreclose a mortgage, and in their complaint the plaintiffs allege that on the 14th day of February, 1870, at Yonkers in the state of New York, the plaintiff Robert Knight and W. K. Couzens and the defendants entered into a contract under seal, whereby the two former covenanted to sell, and the latter to buy, a tract of land situate in Granville county, North Carolina, known as "The Locust Grove Plantation," together with the crop of corn growing thereon, and the corn and oats of the previous year's crop, at the price of $8,000.00, whereof $100 was paid in cash; $1,900, to be paid upon delivery of the deed, and the residue of $6,000 to be secured by a mortgage on the premises, payable $1,000 in one year and $5,000 in six years, with interest, &c. That in pursuance of said contract, the plaintiffs, on the 15th day of February, executed a deed to the land to the defendants, who paid them the $2,000 as agreed and gave their bonds for the $6,000, se-

cured by a mortgage upon the premises—the said deed and mortgage describing the tract as containing seven hundred and fifty acres. That the defendants took immediate possession of the land and have continued the same from that time, receiving the entire profits therefrom. That they have made payments towards the purchase money as follows: $800 in January, 1871; $560 in July, 1871; $300 in March, 1872; and $200 in August, 1873, and failing to pay any more and their bonds all being past due, the plaintiffs, to whom Couzens has assigned his whole interest, ask for a sale of the land and the payment of their claims.

In their answer, the defendants admit the execution of the deed to them, and the mortgage by them on the 15th February, 1870, but disclaim all recollection of having executed any contract for purchase on the 14th. That they signed a paper without reading it, which they were told, and believed, was a guaranty for their peaceable and immediate possession of the land and for the purchase of the plaintiffs' shares in the crops, and if they signed any other paper, then its execution was obtained by fraud and imposition. That they fully explained to the plaintiff, Robert Knight, and Couzens that their purpose was to sell their homes in the state of New York and to move to the land purchased, and hence it was absolutely necessary that they should have the possession at once, and that they would not purchase any tract that did not contain at least 800 acres and so be capable of a division into two suitable tracts. That in response to their inquiry as to the number of acres in the tract in question, both of said parties assured them that it contained 800 acres, and Couzens assured them that he had been around the tract, and being a civil engineer and a surveyor was competent to judge of its size, and that it certainly contained 800 acres or more, and they were also assured that they should be admitted to immediate possession. That moved by these representations and assurances, the defendants

closed their trade for the land and took the deed and gave the mortgage referred to in the complaint. That very soon thereafter they came with their families to this state, expecting to go upon the land, but upon their arrival found one Morrow in possession of the land, claiming to be there, and to keep the possession as a tenant to the plaintiff Robert Knight and Couzens, and to be a partner in the crops, and refusing to quit until they settled with him and paid what they owed him. That being strangers in the county and homeless, the defendants were compelled to purchase the possession from said Morrow—which they did, paying him $750 therefor. That after getting possession they made the payments alleged in the complaint, the first one being in January, 1871, and the last in August, 1873. That soon after making the last, they had the land surveyed and found that instead of 800, it only contained 575 acres, and thereupon immediately wrote to the said plaintiff and Couzens telling them of the deficiency and demanding a rescission of the contract of purchase and a return of the amounts they had paid. That getting no reply, and knowing that the parties lived beyond the state and were in doubtful circumstances, the defendants retained the possession of the land as a security for the amounts due them and have so held it ever since. The defendants ask that the contract of sale be set aside and all the deeds be cancelled and an account taken of amounts paid by defendants and their expenses in getting possession, and of the rents and charges with which they may properly be chargeable, and that whatever may be found due them may be declared to be a charge on the land.

In their reply the plaintiffs deny each and every allegation of fraud and misrepresentation, and especially do they deny representing to defendants that the tract was composed of 800 acres. That so far from giving them any guaranty for immediate possession, the defendant Woods came to

North Carolina before the contract was entered into and saw the land, and upon his return to New York, at the time of the execution of the contract, stated that he had made his own arrangements with Morrow for possession, in case they effected a trade, and would claim nothing from plaintiffs in the event he should make any difficulty with them about it. The plaintiffs further deny that the defendants ever gave them any notice of any deficiency in the quantity of acres, or demanded a rescission of the contract, on the contrary, they say, that so late as August, 1873, the defendant Wood called on the plaintiffs at their home in New York, and made the payment of that date stated in the complaint, that he did not then or at any other time whether before or since utter a single complaint or set up any sort of claim, and neither has his co-defendant ever done so.

On the trial issues were submitted to a jury who find:

1. That Couzens falsely and fraudulently represented to the defendants that the tract of land contained 800 acres.

2. That he also made a like representation of his ability and willingness to give the immediate possession thereof.

3. That he also made similar representations as to the ownership of the crops of corn and oats made on the land and the wheat seeded thereon.

4. That all of said representations were reasonably relied upon by the defendants, who had exercised reasonable prudence in the premises.

5. That neither of the defendants, since their discovery of the deficiency in the number of acres, had recognized their contract of purchase.

Thereupon the court gave judgment that all the contracts and deeds and bonds for money, between the parties growing out of the transaction be cancelled and declared void, and directed an account to be taken between the parties, in which credit should be given the defendants for all sums paid by them towards the purchase money, and for all costs,

charges and damages which they incurred under said contracts, and charge them with reasonable rents for the land while in their possession, and declaring the land to be subject to a lien for any amount that may be found due the defendants and directing a sale thereof for its payment.

There were several exceptions taken by plaintiffs to the admission of evidence, the refusal of the judge to give certain instructions asked for, and to other matters occurring during the progress of the trial, all of which are fully set out in the opinion of the court. Verdict and judgment for defendants, appeal by plaintiffs.

*Messrs. M. V. Lanier* and *Gilliam & Gatling,* for plaintiffs. *Messrs. Merrimon & Fuller,* for defendants.

RUFFIN, J. It being established by the verdict of the jury, that the defendants were deceived by the fraudulent representations of their vendors as to certain matters constituting material inducements to their purchase of the land, out of which this action grows, and that they on their part, had used all necessary diligence and prudence, it must follow that they are entitled to relief in the premises, unless some error was committed in the conduct of the trial by the admission of improper testimony, the withholding of proper instructions asked for, or the rendering of such a judgment as the law does not contemplate in the premises. And these are the matters we now proceed to consider.

1. The plaintiffs' first exception is to the admission of testimony and is thus set out in the case: The deposition of one Lusk, who was a real estate broker in New York state, and as the agent of plaintiffs, first began the negotiations which led to the purchase of the land by defendants, and was present when the contract was executed and the deeds all signed, was taken by defendants and offered in evidence by them. The witness was asked whether the

land was sold as containing any definite number of acres and if so, how many? and in response said, it was represented as containing 800 acres, and he had so entered it on his book. He was then asked—what was the agreement of the parties as to the time the defendants were to have possession of the land? and in reply said they were to have immediate possession. He was then asked—who was to pay the expenses of delivering the possession of the land to the defendants and be at the costs of the same? and his reply was, the vendors.

The above questions and answers were all objected to at the taking of the deposition, and the objections renewed at the time of the reading on the trial, and the grounds assigned were, that it appearing that the contract was in writing and by deed, the deed itself was the best evidence of the terms of the trade and no parol evidence was competent to disprove, or add to, the terms as there written, and as to the last question it was further objected that it called for, not the declarations and agreement of the parties, but the conclusions of the witness' own mind. For the purpose for which this evidence was offered, its competency cannot be questioned. A sale of property brought about by misrepresentation as to facts materially affecting its value, and which though false may reasonably be relied on by the purchaser, will always be avoided, at the instance of the latter, in a court of equity, which court never permits an evil act done with an evil intent to work an injury to an innocent person.

The way must be always open then to show both the fact that the representations were made, and their falsity.

Fraud rarely lurks in the written agreement of parties, entered into at the end of their negotiations with each other, but almost universally precedes it, and consisting as it must necessarily do in such a case, of acts and declarations merely, it can only be exposed by allowing the conduct of the par-

ties, their words and deeds throughout the entire treaty, to be shown to the jury.

To hold the law to be, as contended for by the plaintiffs here, that, because the negotiations of the parties culminated in a written instrument all inquiry into their preceding conduct is excluded, would be to say that fraud, by its very success, might be made secure, unless as can but seldom happen, it could be detected in the mere words of the instrument.

Neither can we yield our assent to the other grounds of exceptions. Taken literally, and disconnected with the preceding inquiries and answers of the witness, the question proposed may seem to be justly liable to the plaintiffs' objection, but taken in connection with matters immediately preceding, it is impossible to doubt that both he who proposed the question, and he who answered it, did so with reference to the agreement of the parties, and were so understood to do by the jury who heard the deposition read.

The second exception was also as to the admission of evidence and is thus stated :

The same witness, Lusk, was asked whether anything but the land was sold to the defendants at the same time, and the price thereof included in the amount they promised to pay the plaintiffs? To which he answered that there were some vinegar and the products of the place. This question had not been objected to at the taking of the deposition, but was at the trial on the ground that it was inadmissible to show by parol the sale of anything not mentioned in the written contract of the 14th of February, 1870.

Without undertaking to determine, and wishing to be understood as not determining, whether the plaintiffs' objection was in apt time, not being made when the deposition was taken, it is sufficient to say that the evidence was, in every possible point of view, admissible.

In the first place, the plaintiffs attach the written contract

of the 14th of February, 1870, to their complaint, and ask that the same may be taken as a part thereof, and that instrument on its face shows that other articles, such as corn, oats and wheat, were included in the sale and went to make up the consideration of the defendants' promise to pay the sum of $8,000, and it was in no wise varying its terms therefore to inquire into that fact, and fix the values of the several articles sold.

But apart from this and upon the naked question of fraud the evidence was competent, as going to show what inducements to the trade were held out by the plaintiffs to defendants, and what assurances of accommodation in their proposed new homes.

The third exception was, because the defendant Wood, who was examined as a witness for the defendants, was permitted to testify that a short time before the trade he was shown by one Morrow, then a tenant of the plaintiffs and occupying the land, a printed hand-bill, signed by Couzens, offering the land for sale and describing it as having advantages of situation, buildings and meadows which in fact it did not possess, it also being shown that the hand-bill had been received by Morrow from Couzens with instructions to exhibit it. His Honor allowed the witness to testify as above and put the hand-bill itself in evidence, and in neither particular do we think any error was committed. This like the other matters considered was one of a series of representations made, and as the defendants say fraudulently made, to induce them to purchase, and the jury were entitled to consider it in that light.

The fourth exception was to the admission in evidence of a letter written by Couzens, four days after the completion of the contract and the execution of the deeds, addressed to the tenant Morrow and handed to defendant Wood for delivery to him, and in it there being a recapitulation of the terms of the trade.

The case does not disclose the grounds of this exception and we cannot conceive of any.

Bearing in mind that the writer, Couzens, was the joint owner of the land with the plaintiff Robert Knight, and that he seems to have been the chief actor in making the sale to defendants, it cannot be doubted that his declarations, made just upon the heels of the trade, are competent evidence, not of the fraud, for that they could not be, being subsequent to the trade, but of the terms of the original contract, and as casting light upon the previous conduct of the parties.

The sixth exception is stated thus:

The plaintiffs offered in evidence two letters—one for each of the defendants—addressed to Couzens and dated one in December, 1875, and the other in October, 1875, asking further indulgence and promising to pay the purchase money of the land as soon as certain crops could be sold. These letters, at some time prior to the trial, had been exhibited by plaintiffs to an attorney of the defendants with a request for an admission of their genuineness, and said attorney had endorsed such an admission thereon and signed the same.

At the trial when one of the letters was offered to be read, the same attorney stated to the court that he had made the admission unadvisedly, without noticing its contents, and under the impression that it was in his client's handwriting, whereas it was now ascertained that he could not write, and there was no envelope accompanying it, and no address upon it, and he objected to the reading of the letter notwithstanding his admission. The plaintiffs' counsel thereupon stated that they had gone to trial relying upon the admission, and were not therefore prepared to prove the genuineness of the letter, and insisted that the letters must either be admitted in evidence or a mistrial ordered. The court was about to direct a juror to be withdrawn when the attorneys for the

defendants asked time to consult together and advise with their clients, and were allowed to retire for that purpose. Upon returning into the court-room, they stated, they would *admit the letter for what it was worth,* and the trial proceeded— the letter being read in evidence without other proof of its genuineness than the admission of the attorney. In their argument to the jury, they having the conclusion, the counsel for the defendants commented on the fact that it purported to be written by a man who could not write, that it was enclosed in no envelope, and was addressed to no particular person, and had about it other marks of suspicion, so that it was entitled to no weight in the minds of the jury—to all of which no exception was taken at the time; but the plaintiffs after the verdict, made it a ground of a motion for a new trial, and now assign it as error in the court that the attorney was permitted, under the circumstances of the case, thus to comment upon the letter without correction either at the time or in the judge's charge to the jury.

The statute (C. C. P., §331) provides that either party may exhibit to the other any paper material to the action, and request an admission in writing of its genuineness, which if he fail to give, he may, in a certain contingency, be required to pay any expense that may be incurred in order to establish its genuineness on the trial. We do not understand the statute, by this, to intend to commit the party, whose admission of the genuineness of the instrument is sought, in any degree beyond that to which he would be committed had the execution of the instrument been established by proof *aliunde.*

The authenticity of the letter in question being admitted as it was in the court below, the truth of the matters therein contained might still be the legitimate subject of inquiry— inquiry, too, in which its appearance, the absence of an envelope, the want of an address, and the fact that it was written by an amanuensis for one incapable of writing for

himself, might all lend efficient aid to the jury in reaching a right conclusion.

It was the privilege, thus to comment on the contents of the letter, which we understand the counsel to have reserved to themselves, when they announced their purpose *to admit it for what it was worth*, and it does not appear to us that they either abused the privilege reserved, or improperly resorted to any other in connection with the letter in question. But if they had done so, we should still be constrained to hold that the plaintiffs' objection comes too late. They heard the comments of counsel (unwarranted as they say) without once invoking the interference of the court, and when specially asking instructions as to other matters, they were silent as to this, which is now the subject of their exception, thus giving to His Honor no opportunity to correct the error, if any was committed, and place the matter right in the minds of the jury. A party cannot be allowed thus to speculate upon his chances for a verdict, and then complain because counsel were not arrested in their comments upon the case. Such exceptions, like those to the admission of incompetent evidence, must be made in apt time, or else be lost.

The seventh exception: At the close of His Honor's charge to the jury (to which up to that time no exception seems to have been taken) the plaintiffs' counsel asked that the jury might be instructed, "that if they should believe that Couzens said they could give immediate possession of the land sold to defendants, knowing that they could not, it would still not be a fraudulent representation, unless he contracted to give such possession," and they were so instructed, except that the judge added, " it was for the jury to consider all that was said, and if they find there was any false statement or agreement outside the written contract which formed a material inducement to it, they should consider that in

making up their verdict." As it cannot be supposed that the plaintiffs complain of that portion of the charge, which was given in their own words, their exception must be confined to that which was added by His Honor. This, as it seems to us, is in almost exact conformity, as regards both its language and intent, with the decisions of this court on the subject. "When representations are made by a party to a contract," says BYNUM, J., "which may reasonably be relied on by the other, and those representations are false and fraudulent and cause loss to the party relying on them, he is entitled to relief." *Hill* v. *Brower*, 76 N. C., 124.

The eighth exception: The plaintiffs' counsel asked that the jury might be further instructed, "that if they should believe that Couzens represented to defendants, that they could give the immediate possession of the land, and were entitled to sell the crops mentioned in the contract, and such representations were false with his knowledge, and were material inducements to defendants to enter into the contract, they would still be immaterial, provided they should further believe that the defendants themselves procured the possession, and made the payments towards the purchase money as admitted in their answer," but this, the court declined to give. If we correctly apprehend the plaintiff's meaning, his prayer was, in effect, to ask the court to tell the jury that however fraudulent the plaintiffs' conduct may have been and however gross their imposition upon the defendants, it would be cured provided the defendants had subsequently acquired, by an expenditure of their own money, that possession and the crops, which they were induced to believe they were acquiring under their contract with the plaintiffs, and taken in this light, it was properly refused by the court.

We were referred by counsel to the case of *Nance* v. *Elliott*, 3 Ired. Eq., 408, as an authority in support of the position, that when one purchases land from a vendor whose title is

defective, and by his own means supplies the defect and secures the title, he can have no claim on his vendor for the money so expended. But upon a careful review of the case, it becomes perfectly manifest that Judge NASH, who delivered the opinion, was speaking with reference to a purchaser, who had knowledge of the defect at the time of his purchase, and in whose case there was no element of fraud. We say this is manifest because this was a case of fraud stated in the bill filed, but the party failed in his proofs, and in the closing part of his opinion, the judge distinctly says that if the fact had been, as stated in the bill, that he believed his vendor had a good title, and upon discovering the contrary, had applied to a court of equity to compel him to complete the purchase by paying the necessary expenses, his prayer would have been granted, thus furnishing not only an authority in support of the judge's ruling in the case now before us, but a rule to the defendants by which their damages may be determined.

Neither can the fact that the defendants continued after the discovery of the fraud, to make partial payments of the purchase money, take from them *all* right to relief.

A party is not bound to abandon a contract brought about by fraud and imposition upon him, but he may, if he sees proper, adhere to the contract, and seek his compensation for the fraud in an action at law for damages.

That such an action will lie for fraud practiced in the sale of land was intimated first in *Ransom* v. *Shuler*, 8 Ired. Eq., 304, and was expressly declared in *Pettijohn* v. *Williams*, 1 Jones, 145.

The law allows the purchaser in such a case to either abandon the contract absolutely or else abide by it and sue at law for the deceit, and the only requirement it puts upon him is to make and declare his election the moment the knowledge of the fraud is attained by him.

Our conclusion upon the whole case is, therefore, that no

such error was committed on the trial below, as entitles the plaintiffs to have another jury to pass upon the issues between the defendants and themselves, and this leaves as the only matter for our further consideration their exception to the judgment rendered in that court. By its terms, the judgment declared all the contracts and agreements between the parties, having reference to the land in question and whether executed or executory, and including the bonds given by the defendants for the purchase money, to be null and void, and directed the same to be cancelled.

The rule of law is, that he who would rescind a contract to which he has become a party must offer to do so promptly on discovering the facts that will justify a rescission, and while he is able of himself, or with the aid of the court, to place the opposite party substantially *in statu quo*; he must not only act promptly upon the first discovery of the fraud, if fraud be the cause assigned for the rescission asked, but he must act *decidedly*, so that his vendor may certainly know his purpose, and thereby have the opportunity afforded him to assent to the rescission, resume the property and look out for another purchaser. In no case is he permitted to rescind when he has continued to treat with his vendor upon the basis of the contract after his discovery of the fraud practiced upon him, and neither is it allowed him to rescind in part and to affirm in part; but if done at all it must be done *in toto*.

This rule is founded on the plainest principles of justice and has been universally recognized, and virtually so by this court in the cases of *McDowell* v. *Sims*, 6 Ired. Eq., 278; *Tomlinson* v. *Savage, Ib.*, 430; and *Alexander* v. *Utley*, 7 Ired. Eq., 242.

Under an application of this rule to the conduct of the defendants in the case at bar, it must be apparent that they are not entitled to the relief given them in that part of the decree excepted to, of having their contract with the plaintiffs entirely annulled.

They entered into the contract in the year 1870, it being an entire one for the purchase of the land and the crops mentioned. The fraudulent misrepresentations of which they complain had reference—

1. To the title to the crops sold.

2. The ability of the plaintiffs to deliver the possession of the premises.

3. The deficiency in the quantity of the land.

Of the fraud practiced upon them in regard to the first two particulars they became informed before the first year expired, and of the last, by actual survey in 1873.

In spite of this information they continued to make payments on the purchase money until late in 1873, and even after that to recognize the obligation of the contract in their correspondence with the plaintiffs, permitting one of their vendors to assign his interest in the contract without a word of warning to the assignee, and indeed, without a word of notice or complaint to any one so far as the evidence discloses, until 1878, when the present action was instituted for the enforcement of their contract, and then for the first time, they plead fraud, on the part of their vendors in procuring the contract, and ask to be relieved from its obligation after having enjoyed its benefits, and receiving the entire profits from the land for more than eight successive years.

Such a defence has too much the appearance of a pretext set up for the purpose of getting rid of what has turned out to be a bad bargain, and it cannot be tolerated in a court of equity, which insists upon fair play from both sides. It is true, that by their verdict the jury have said that the defendants have not recognized their obligation since they discovered that their tract did not contain 800 acres. But then, that was in 1873, and five years intervened before this action was brought, through all of which they were passive.

It is not sufficient that they did nothing to manifest their

recognition of the contract, but they were required to be active in making known their repudiation of it, and a delay of five years to do so is fatal to their right to have a rescission of their contract. In the case of *Alexander* v. *Utley*, before cited, a delay of a single year was held sufficient to preclude the plaintiffs from such a right.

So much then of the judgment of the court below as declares the contract of the defendants null and void is by this court deemed to be erroneous, and to that extent it is reversed.

They are, in our opinion, entitled to be allowed every such sum as was reasonably expended by them in procuring the possession of the land and purchasing the crops of every kind, agreed to be sold to them; also for the deficiency in the number of acres in the tract, at the average price per acre supposing it to have been sold as containing 750 acres. Having knowingly accepted a deed for that number of acres, they are precluded from asserting that their contract was for more, as that would be adding to a written instrument by parol proof, which the law does not permit to be done.

The above allowances, with the interest on all, are to be deducted from the aggregate of the purchase money now due, and there must be an account taken to ascertain the residue of the plaintiffs' claim for the purchase money, which is declared to be a lien upon the land in question.

The plaintiffs insist that, inasmuch as the defendants might have sued at law for the deceit as soon as known to them, their right to have the above allowances made them is now barred by the statute of limitations. Not so, however. The rule in equity is, that a vendor who has fraudulently sold more than belonged to him, cannot with a *good conscience*, coerce the payment of the whole purchase money, but on the contrary, the vendee has the right to withhold so much of it as will reimburse him for his loss, because to

3

that extent the consideration has failed, and in such a case, so long as the contract remains unexecuted the statute of limitations has no application. *Ransom* v. *Shuler*, supra. *Earl* v. *Bryan*, Phil. Eq., 278.

We have not failed to observe that the answer of the defendants contains but a single prayer for relief, and that for a rescission of their contract. But we understand that under the code-system, the demand for relief is made wholly immaterial, and that it is the case made by the pleadings and the facts proved, and not the prayer of the party, which determines the measure of relief to be administered, the only restriction being that the relief given must not be *inconsistent* with the pleadings and proofs. In other words, the code has adopted the old equity practice when granting relief under a *general prayer*, except that now no general prayer need be expressed in the pleadings, but is always implied. The case of *Whitfield* v. *Cates*, 6 Jones Eq., 136, furnishes an instance where a plaintiff, though he failed as to his principal equity, was allowed to avail himself of a secondary equity not inconsistent with the allegations in his bill and the proofs in the cause.

It will therefore be referred to the clerk of this court to take the accounts between the parties in accordance with this opinion, and the cause is retained further for orders.

Error.                              Judgment modified.