JOSIAH G. ALLEN v. THE WILMINGTON AND WELDON RAIL-
ROAD.

*Petition to Rehear —Exceptions—Record —Fraud —Practice—
Deed — Cancellation —Issues —Exceptions —Damages —Com-
pensation—Judgment.*

1. The rule of practice is that points not raised by exceptions will not
   be entertained when presented for the first time in the Supreme
   Court.

2. In an action to declare void a deed obtained upon false represen-
   tations. which were a part of the consideration for making it,
   the plaintiff sought also damages for subsequent injury to the
   land contained therein : *Held*, such action could be maintained,
   and this, though it was not commenced until two years after the
   discovery of the fraud and after the plaintiff had accepted money
   in compensation for certain other injuries resulting at the same
   time and from the same operations.

3. In the new trial of such action, one of the issues was—" 7. Did
   the defendant, after adopting the line upon which the road was
   constructed across plaintiff's land, pay the plaintiff one hundred
   dollars, and thereby induce plaintiff to let the water out of his mill-
   pond for thirty days, in order that the said pond might be crossed,
   as it was, by a trestle, instead of building cribs in the waters?" To
   which the jury responded "Yes." Defendant excepted to the hold-
   ing of the Court below, that this payment did not amount to a
   *parol* grant of the right-of-way.   It was not alleged, and it did not
   appear, that plaintiff intended, by accepting such payment, to
   ratify the deed which had been obtained by fraud: *Held*, (1) that
   the holding of the Court below was not error ; *Held*, (2) that such
   exception raised no valid objection to the judgment setting aside
   the deed for fraud, and giving certain damages for injuries to the
   land embraced therein ; *Held*, (3) that petition to rehear upon
   such case presented will not be granted.

This is an Application of the defendant therein to rehear
the case of *Allen* v. *W. & W. R. R. Co.*, 102 N. C., 381,
decided at the February Term, 1889.   In that case, the late
Chief Justice SMITH, delivering the opinion of the Court,

among other things, said: "There is no difficulty, then, in prosecuting the action, so far as it proposes to put the conveyance out of the way, and seek damages for subsequent injury, unless it be in the plaintiff's own inaction to make objection when he found a new line had been adopted by the defendant, and accepted compensation for letting the water out of his pond to enable the company to go on with the work and expend largely in constructing the road. This point has been strongly urged in the argument, but as no exception of the kind is shown in the record, it cannot now be entertained, whatever may have been its force if taken in apt time. The judgment following the verdict, which affirms the allegations as to the influences brought to bear upon the plaintiff in inducing the making of the deed, will remain undisturbed."

It is alleged in the petition that what is thus said is erroneous; that the appellant in that case did except in such respect in the way and manner following—that is to say, the Court on the trial submitted to the jury an issue in these words—

"7. Did the defendant, after adopting the line upon which the road was constructed across plaintiff's land, pay the plaintiff one hundred dollars, and thereby induce plaintiff to let the water out of his mill-pond for thirty days, in order that the said pond might be crossed, as it was, by a trestle, instead of building cribs in the water?"

By consent of the parties, the jury responded to this issue, "Yes."

In respect to the issue and the response thereto just mentioned, the Court below said and held as follows:

"The response to the fourth issue, 'Nothing,' and the seventh issue, 'Yes,' were entered by consent. Counsel for defendant contended that the finding upon the seventh issue amounted to a finding in law; that the defendant had a license from plaintiff to construct the road as it was built

over his land for the consideration paid to plaintiff, one hundred dollars, and excepted to the ruling of the Court that it did not amount to a parol grant of right-of-way."

To this decision, the appellant excepted in these words:

"14. The defendant excepts to the holding of his Honor that the payment of the $100 did not amount to a parol grant of right-of-way."

The petition further alleges error in the decision of this Court, complained of as follows:

"That upon the hearing of the said action, on appeal, in the Supreme Court, this defendant's counsel urged that the conduct of the plaintiff, in accepting from this defendant one hundred dollars, and, in consideration thereof, drawing off the water of his mill-pond for the purpose of facilitating the construction of the railroad along the new route, which construction was the fraud of which he complained, was such an acquiescence in that fraud as, in a Court of Equity, would debar him from any relief against it. But this Court refused to consider the point, and said, through his Honor, the Chief Justice, who delivered its opinion: 'This point has been strongly urged in the argument, but as no exception of the kind is shown in the record, it cannot now be entertained, whatever may have been its force if taken in apt time. The judgment following the verdict, which affirms the allegations as to the influences brought to bear upon the plaintiff in inducing the making of the deed, will remain undisturbed'—as appears by the record of said action now here.

"Your petitioner humbly suggests to your Honors that in the refusal of this Court to entertain the said point for the reason alleged there was error. That the fact on which the point was based appears upon the face of the record proper, to-wit, in the verdict of the jury; and whenever error so appears, it is the practice of the Court to take notice of it, whether it be urged by way of exception or not; that by *The*

*Code*, § 957, it is provided that, 'in every case the Court may render such sentence, judgment and decree as, on inspection of the whole record, it shall appear to them ought, in law, to be rendered thereon.' And your petitioner shows that in the case of *Thornton* v. *Brady*, 100 N. C., 38, this Court held that, 'as to the essential parts of the record, the Court will, *ex mero motu*, take notice of errors apparent in it, correct it and enter such judgment as in law ought to be rendered. * * * If what it must necessarily see in the record of the action is erroneous, it will correct the error, although it be not assigned.' And in *Godwin* v. *Monds*, 101 N. C., 356, the Court say: 'It was contended on the argument that the plaintiffs did not except and assign as error that the Judge heard the motion and gave judgment in the county of Anson. That is so; but it does not appear upon the face of the record, in some way, as it should do, that the Court had authority to give the judgment, and, therefore, the objection might be taken here, in the absence of any formal exception or assignment of error.'

"And your petitioner shows that these cases escaped the notice of its counsel, and they were not cited, nor in any manner brought to the attention of the Court in the argument here.

"And your petitioner further shows that if this honorable Court had entertained and considered the said point, it would have been called upon to decide that the judgment of the Court below avoiding the said deed was erroneous; for your petitioner is advised that it is settled in the law of North Carolina that when a party, with full knowledge of all the material facts, freely does what amounts to a recognition of a transaction or conveyance as existing. or acts in a manner inconsistent with its repudiation, there is acquiescence, and the transaction or conveyance, although originally impeachable, becomes unimpeachable in equity."

*Mr. C. M. Busbee,* for plaintiff.
*Messrs. A. W. Haywood* and *George Davis,* for defendant.

MERRIMON, C. J.: The error assigned in the action which
the petitioner asks to have reheard as to the refusal of the Court
to instruct the jury that the plaintiff had granted to the
defendant by parol license the right-of-way, in the view the
Court took of the case, became immaterial, and it was not
necessary to decide the question raised in that respect. The
Court had jurisdiction for the purpose of deciding the ques-
tion, and incidental questions as to the validity of the deed
in question; it did not have jurisdiction as to the matter of
damages.

It is not alleged that error was assigned in the *case settled on
appeal,* in that the Court refused or neglected to instruct the
jury that the plaintiff ratified and waived objection to the deed
by accepting one hundred dollars from the defendant, as the
jury found he did do, in response to the seventh issue sub-
mitted to them. The Court was not asked to give any
instruction in that respect, nor did it do so, so far as appears.

But the learned counsel of the petitioner contends that it
was the duty of this Court, without any assignment of error,
to look through the record and render such judgment as
ought, in law, to be given; and inasmuch as it appeared by
the record that the defendant did, "after adopting the line
upon which the road was constructed across the plaintiff's
land, pay the plaintiff one hundred dollars, and thereby
induce plaintiff to let the water out of his mill pond for
thirty days, in order that the said pond might be crossed, as
it was, by a trestle instead of building cribs in the water,"
it ought to have held that such payment, notwithstanding
the fraud of the defendant in procuring the deed, was a rati-
fication thereof and a waiver of all objection to it, and given
judgment accordingly for the defendant. This contention
is founded upon a misapprehension of what the record con-

tains, and a failure to notice material matters not embraced by it.

The plaintiff alleged in his complaint that the deed was obtained from him by the fraud of the defendant and its agents. The defendant in its answer simply broadly denied the allegation of fraud—it was not alleged, in terms or by implication therein, that the plaintiff had in any way ratified the deed or waived his right to have it declared void for fraud, nor was any such defence in any way set up on the trial, or at any time in the Court below, so far as appears. It alleged in its answer, as a separate defence, "that upon the location and construction of the present line of said road across the plaintiff's lands, the plaintiff demanded and received from the defendant the sum of one hundred dollars for the license and privilege of constructing said road on the line as located. And the defendant pleads the same as a defence to this action." The seventh issue recited above was raised by this allegation and the denial thereof. The response to it was entered by consent, for the purpose of raising the question as to the grant of a license to locate the road on the line on which it was constructed. The fact so found is an isolated one, and the finding is, that the money was paid for the purpose specified therein. It may be that such payment of the money was not intended or understood by either party to be a ratification of the deed, or a waiver of objection to it; indeed, the circumstances and the fair implications from the record strongly suggest the contrary. It may be that the plaintiff, seeing that the defendant had located and was constructing its road, as he and it believed it had the right to do by virtue of its charter, and without reference to the deed, accepted the money for, and only for, that consideration and purpose specified in the finding of the jury. If so, surely it could not reasonably or justly be contended, much less held by the Court, to be a waiver of objection to the fraudulent deed, or the right of the plaintiff to damages. Courts of

equity, when, in possible cases Courts of law cannot, will uphold fair dealings between parties, and enforce equitable rights growing out of them; but they will not, in such cases, prevent a party from asserting his just rights.

It was not alleged or contended in the pleadings in the Court below that the plaintiff ratified, or intended to ratify, the fraudulent deed complained of. The acceptance of the money specified for the purpose and under the circumstances specified in the finding of the jury, did not, of itself, necessarily imply a ratification of that deed by the plaintiff, nor does it appear that the plaintiff or the defendant intended that it should be treated as a ratification of it. The judgment complained of was not inconsistent with so much of the record as preceded it, and it was such as the law allowed and required upon such record. This Court was, therefore, warranted in saying that no exception was made in the respect mentioned, and in declaring that there was no error in so much of the judgment as had reference to the deed. The petition must, hence, be dismissed.

SHEPHERD, J.—dissenting: The plaintiff executed a deed to the defendant for a general right-of-way over his lands, and this action is brought for the purpose of having the deed cancelled upon the ground that it was procured by the false representation of the defendant's agent. The fraud found by the jury consisted in the false representation that the defendant would build its road upon a certain line which had been surveyed and located, and was then understood and designated between the parties, and that the defendant abandoned the said route and built its road upon an entirely new and more objectionable one. The fraud having been in the treaty, and not in the *factum*, the deed was not void, but voidable, and could only be set aside by the decree of a Court of Equity. The plaintiff could confirm it either expressly or by conduct, and until actually

set aside, it was an effective and operative conveyance, vesting a general right-of-way in the defendant. *Logan* v. *Simmons*, 1 D. & B., 13; *Canoy* v. *Troutman*, 7 Ired., 157; 2 Pom. Eq., 964; Pollock Cont., 506; Bispham's Eq., 472.

"Cancelling an executed conveyance is the exertion of a most extraordinary power in Courts of Equity, and when asked for on any ground it will not be granted unless the ground for its exercise most clearly appears." Bispham's Eq., 475. "When a party desires to rescind, on the ground of fraud or mistake, he must, upon the discovery of the facts, at once announce his intention and adhere to it. He is not permitted to play fast and loose." Bispham's Eq., 259. "He must not only act promptly upon the first discovery of the fraud, if fraud be the cause assigned for the rescission asked for, but he must act decidedly." *Knight* v. *Houghtalling*, 85 N. C., 31. "He must do so at the earliest practical moment after the discovery of the cheat. That is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate, nor can he be allowed to deal with the subject matter of the contract and afterwards rescind it." Chitty Cont., 408 *et seq.; Mason* v. *Bovet*, 1 Denio, 69; Kerr on Fraud and Mis., 127; Pollock Cont., 511; *Swain* v. *Seamens*, 9 Wall., 250.

Applying these familiar principles of equity to this case, it is difficult to understand how the plaintiff is entitled to relief.

The record shows that the defendant commenced building its road on the plaintiff's land in December, 1885. The plaintiff not only had notice, but he actually assisted the defendant in constructing the road upon the new route, by drawing off the water from his mill-pond, in order to facilitate the work. For this, he received the sum of one hundred dollars. And now after the road has been completed, and about two years after the discovery of the fraud and his confirmatory acts, he asks a Court of Equity to set aside the deed and expose the defendant to a suit for damages for doing the very thing which he helped it to do. It seems to

me that the bare statement of such a proposition ought to shock the conscience of a Court of Equity and effectually bar its doors against relief.

The principle which denies relief in such a case is so plain that it is hardly necessary to cite any authority in its support; but as it seems to be drawn in question by the disposition of this appeal, the following extracts are submitted:

2 Pom. Eq., § 897: "If, after discovering the untruth of the representation he, the plaintiff, conducts himself with reference to the transaction as though it were still binding, he thereby waives all benefit of, and relief from, the misrepresentations."

Big. Frauds, 184: "It is well established that if a party, with knowledge that a fraud has been perpetrated upon him in a particular transaction, confirm the transaction by making new agreements or engagements respecting it, or by retaining or using the subject of it after knowledge, or otherwise recognize it as binding, he thereby waives the right to treat it as invalid and abandons his right to rescind."

And see 2 Pom. Eq., § 965, p. 499.

*Humphreys* v. *Finch*, 97 N. C., 308: "It is established doctrine that whenever an act is done or statement made by a party which cannot be contradicted without fraud on his part and injury to others whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what otherwise would be mere matter of evidence."

In addition to these authorities, we have the strong intimation of Chief Justice SMITH in this very case, 102 N. C., 381, and it can hardly be doubted that he would have declined any relief had he thought that the effect of the confirmatory acts of the plaintiff was presented by the exceptions. He was inadvertent to the decisions in *Thornton* v. *Brady*, 100 N. C., 38; *Godwin* v. *Monds*, 101 N. C., 356, and other cases in which it is held that, "as to the essential parts of the record, the Court will, *ex mero motu*, take notice of errors apparent in it, and enter such judgment as in law

ought to be rendered. * * * If what it must necessarily see in the record of the action is erroneous, it will correct the error, although it be not assigned."

It now seems to be conceded that this difficulty about the absence of exceptions is out of the way, but it is said that the ratifying acts of the plaintiff were pleaded only as a license and not as an estoppel. It matters not what has been pleaded, these acts are found by the jury, and they stand as a part of the record, and upon such a record (which we are bound to inspect), I am unwilling to agree that any relief can be granted. Such strictness in pleading is not consistent with the liberal rules heretofore acted upon by this Court. The fact of the plaintiff having assisted in the location of the road was, however, set forth in the answer, and this fact being found, it, in my opinion, presented an insuperable barrier to the plaintiff's action, and this without regard to whether it was pleaded as a license or an estoppel, or whether its legal effect was pleaded at all. Under *The Code* it is well settled that the Court renders judgment upon the facts found, irrespective of the prayer for relief or the technical rules of pleading.

Apart from this, however, I deny that it was necessary for the defendant to have specially pleaded the ratifying acts of the plaintiff. In cases like the present, it is the duty of the plaintiff to show all of the circumstances entitling him to such extraordinary relief, and in this case it was absolutely necessary that he should have explained his long delay and inconsistent conduct. This he has utterly failed to do, but it is suggested that he may have acted under the supposition that the defendant had entered by virtue of the provisions of its charter. To this it may be answered that a Court of Equity does not go out of its way to imagine an excuse for the inconsistent conduct of one who is seeking its aid, and especially is this true when the plaintiff himself does not pretend to explain his conduct upon such a ground, and

which ground, as a matter of law, did not and could not exist.

At the time of the entry, the defendant had a conveyance of a general right-of-way. It is presumed to have entered under it. *Ryan* v. *Martin*, 91 N. C., 465; *Graybeal* v. *Davis*, 95 N. C., 508. Until that conveyance had been disaffirmed and set aside, it could not have entered under the right of eminent domain, *conventio vincit segem*. This right under the charter does not arise until there is a failure to agree with the owner. Pearce on Railroads, 1881; 1 Redfield, 65, *et seq.* See also the original opinion in this' case, 102 N. C., 381.

The estopping conduct of the plaintiff having been pleaded by the defendant and found as a fact by the jury, and this fact being entirely unexplained, I am of the opinion that we erred in granting the relief prayed for, and that the petition to rehear should be granted.

AVERY, J.—concurring: Adhering to a course of action adopted, perhaps, without sufficient reason, I did not sit on the argument of this case because I had tried it in the Superior Court. But, as three other members of the Court have concurred in the opinion filed by the Chief Justice, I feel that it is not only my privilege but my duty to express my concurrence in the conclusion of the Court, especially when it rests upon the broad ground that the exception on which the defendant company relies in support of the petition, if taken in apt time and in the prescribed mode, does not entitle it to a rehearing, because there was no error in the ruling of the Court below.

The plaintiff asked the Court to cancel a deed made by him to defendant for the right-of-way through his farm, and for damage done to him in the construction of the defendant's road by a different route over his premises. Upon the finding of the jury, in the exercise of their exclusive right,

that the defendant company surveyed and marked, by stakes, a line through the plaintiff's fields, and, by fraudulently inducing him to believe that its road would be built along the line so marked, procured the execution by him of the deed in question, this Court affirmed so much of the judgment of the Court below as declared the deed fraudulent and void, but reversed so much of said judgment as provided for the recovery of damages for right-of-way, as distinguished from damages recoverable under the statute (*The Code*, § 1975) for failure to construct cattle-guards and crossings (102 N. C., 281). If we accept the finding of the jury, as this Court is bound to do, without question, we cannot hesitate to admit and declare as an abstract proposition that the fraud has been properly proven and the plaintiff's right to the remedy of cancellation established. *Hall* v. *Pickering*, 40 Me., 548; *Barlow* v. *Railroad*, 29 Ia., 276; *Douglass* v. *N. Y. & E. Railroad Co.*, Clarke's Ch. (N. Y.), 174; *Taylor* v. *Cedar Rapids & St. Paul Railroad Co.*, 25 Ia., 371; *Tinkhorn* v. *Erie Railroad Co.*, 53 Barb. (N. Y.), 393.

It does not appear in this Court that any instruction was asked as to the *quantum* of proof necessary in showing the fraud. If, therefore, there was any force in the suggestion of counsel upon this point, the argument is not applicable to the facts of this case. Whatever measure of proof was required by law, we must assume that it was offered in order to lead the jury to the conclusion reached by them.

It is not necessary to cite authority to sustain the propositions—

1. That the defendant company could have proceeded, under section 16 of its charter, and chapter 49 of *The Code*, to appropriate the right-of-way and build its road upon the very line upon which it is now located, without notice to the plaintiff leaving him to initiate proceedings to obtain damage, or lose his right to do so by the lapse of time. *Allen* v. *Railroad*, 102 N. C., 381.

2. That notwithstanding the fact that it had procured the execution of the deed to the right-of-way through the fraudulent representations of its agents, the company could have proceeded, even while a suit brought for the cancellation of the deed was pending, without notice to plaintiffs, to build the road where it is now located on his premises, and he would have had no right to retard the work of construction and no remedy in damages except by a proceeding under the section of the charter referred to.

3. That if the defendant had not procured the execution of the fraudulent and voidable deed, the plaintiff might have maintained his action, if he had proceeded in the way prescribed by law and brought it in the proper jurisdiction, even despite the plea of the statute of limitations interposed against him.

4. That if no such deed had been executed, and the defendant had entered upon the land of the plaintiff and had begun, as it did, to construct its road, the mere act of accepting one hundred dollars for letting off the mill-pond and losing the tolls for a season, in order to enable the defendant to cross at less expense, by means of a trestle instead of by building coffer dams, would not have operated to stop the plaintiff from claiming damage for digging up or covering up the rich and productive soil at other points.

The statute of frauds would be a nullity if unwary land-owners could be so easily and inexpensively entrapped into some act or admission that would enable a corporation to acquire an easement in their land at one-fifth of its value as assessed by the jury. A parol license to enter and build the road even would have been revocable, and would not have operated to pass title. *Hilfield* v. *Central Railroad Company*, 29 N. J. L., 571; *Miller* v. *Railroad*, 6 Hill (N. Y.), 61; *Railroad* v. *Railroad*, 104 N. C., 658.

It has been held, too, that when such license is revoked, the licensee has no remaining right growing out of it except

that of entering upon the premises for the purpose of re-moving any personal property placed by him on the land while operating there by leave of the owner. *VanNess* v. *Packard*, 2 Peters', 143; *Barnes* v. *Barnes*, 6 Vt., 388.

The proposition contended for by counsel, therefore, if sustained, would establish the startling doctrine, that because the defendant's agents had practiced a fraud upon the plaintiff, and he had chosen not to bring his suit to annul the transaction until near the close of the statutory period allowed him, a Court of Equity would either curtail the limit of his right to bring his action, as expressly defined by law, or hold that his conduct in receiving compensation for the temporary loss of the tolls of his mills operated to estop him from claiming damages for the injury to his land by making excavations and fills upon it, because he had not notified the perpetrators of the fraud, immediately, or within a reasonable time, that he would invoke the aid of a Court of Equity, and did not, accordingly, begin this action. The defendant cannot show any act of the plaintiff that amounted to an unequivocal acquiescence in the convey-ance of the right-of-way, or that was inconsistent with his allegation that he was defrauded by misrepresenta-tions as to the location of the line, or that could have reasonably induced, and did induce, the defendant to make expenditures for which it cannot now be reimbursed, under the belief that the plaintiff recognized the validity of his deed as a conveyance of the right-of-way where the road was actually located on the plaintiff's land. The acceptance of one hundred dollars for diminishing the cost of construc-tion by affording the corporation the opportunity to erect a trestle across the mill-pond, would have been entirely con-sistent with the assertion of a claim for damages, necessarily incident to the work of grading the road-bed, if no deed had been executed and no proceedings for damage had been instituted when it was paid. The act was no more mislead-

ing than would have been the selling by plaintiff to defendant of timber to construct the trestle. The plaintiff could not control the defendant as to the location or restrain it from prosecuting the work on the line selected, and it would be hard measure if equity should leave him the choice of refusing a fair price for his timber or a large sum for temporarily stopping the operation of his mill, because the party with whom he was dealing had defrauded him and he had postponed—not unreasonably or beyond the statutory limit—invoking the power of the Court to have the transaction declared fraudulent, null and void. The reason assigned for refusing relief to the injured plaintiff is, that the defendant company, which is presumed to have inspired the misrepresentations of its agents, and therefore to have had notice of the voidable character of the deed, was misled by the plaintiff's exercise of his lawful right in determining when he should bring his action. The corporation will not be allowed to shield itself from responsibility for a fraudulent act by invoking a principle that affords protection only to the innocent. If the deed made by the plaintiff had described specifically the first line surveyed, the company would still have been at liberty to waive their rights acquired under the deed and survey, locate and build upon their present line. How, then, could the plaintiff know whether the company claimed to be acting by virtue of the deed or under the provisions of their charter? He could not restrain its agents. He was not bound, as I conceive, by any principles of equity to treat them as alien enemies, or be concluded in the assertion of his rights because he gave them aid and comfort by selling them provisions, timber, or even affording them the opportunity to cross his pond on a trestle instead of a bridge.

It is not contended that the plaintiff confirmed his voidable deed, because that must have been done, if at all,

106—34

by some "deliberate act, intended to renew and ratify a former transaction known to be voidable." 2 Pom. Eq. Jur., § 965.

It is claimed by counsel that the conduct of plaintiff amounted to an acquiescence, on his part, in the validity of the claim of the defendant to the right-of-way, where the road was located on his land, under his voidable deed. The defendant seeks to bring himself within the principle applicable to one who "stands by and knowingly permits another to deal with the property as though it were his, or as though he were rightfully dealing with it, without interposing any objections, as by expending money upon it, making improvements, erecting buildings, and the like." 2 Pom. Eq. Jur, § 818. In such cases, in order to deprive the defrauded party of remedy in equity, the party against whom he asks relief must be ignorant of the real condition, and not the person or corporation whose fraudulent conduct has cast a cloud upon it. *Ibid.;* Story's Eq. Jur, § 1543. Such is the doctrine of acquiescence operating as an estoppel.

Where it has been held that the conduct of a person was such as to prevent him, in a Court of conscience, from seeking a remedy to which he would have been entitled but for some act of his calculated to mislead his adversary, the ruling has rested on the maxims, that "He who seeks equity must do equity," and "He who comes into equity, must come with clean hands." 2 Pom. Eq. Jur., § 815.

The jury have found that the hands of the defendant were stained by fraud, of which the plaintiff was the victim. This Court cannot pervert the benign principles of equity so as to reverse that finding and fasten the fraud upon the party found to be innocent by those empowered by law to ascertain the facts. This doctrine operates by analogy to the principle governing estoppel, and is often spoken of by law writers as a form of *quasi* estoppel. 2 Pom. Eq. Jur., § 817.

In *DeBussche* v. *Alt*, 8 Ch. Div., 286, THESIGER, L. J., crystalized the principle as follows:

"If a person having a right and seeing another person about to commit, or in the course of committing, an act infringing upon that right, stands by in such a manner as really to induce the person committing, and who might have otherwise abstained from it, to believe that he assents to its being committed, he cannot afterwards be heard to complain of the act. * * * But when once the act is completed without any knowledge or assent upon the part of the person whose right is infringed, the matter is to be determined upon very different legal considerations. A right of action has been vested in him, which, at all events, as a general rule, cannot be divested without accord and satisfaction or release under seal. *Mere submission* to the injury for any time *short of the period limited* by statute for the enforcement of the right of action, cannot take away such right, although under the name of *laches* it may afford a ground for refusing relief under some peculiar circumstances, and it is clear that even an express promise by the person injured, that he would not take any legal proceedings to redress the injury done him, could not by itself constitute a bar to such proceedings, for the promise would be without consideration, and therefore not binding." *Ibid.* See also *Duke of Leeds* v. *Earl of Amherst*, 2 Phil. Ch. Div., 117.

Applying the principles to this case, we find that, though the deed was voidable at the instance of the plaintiff, the entry by the defendant upon his land was not, therefore, an infringement of his rights. Until he had actually begun to construct his road on a different line from that first surveyed, shown to plaintiff in order to procure the execution of the deed, the plaintiff had no cause of action. The defendant company might, until then, and the plaintiff was bound to assume, that it would locate its road in good faith according to the promises made by its agents. After the work had

begun, and his cause of action had arisen, the institution of
a suit in the Superior Court to annul the deed, and cotem-
poraneously of a proceeding for the condemnation of the
right-of-way and the assessment of damage in another juris-
diction, would not have retarded the work of construction
for a moment, or have diminished the cost of building by a
single dollar. Indeed, the act relied upon to show acqui-
escence on the part of plaintiff in the change of location,
manifestly helped the company to save, instead of causing
it to expend, money that it would not otherwise have paid
for building.

The defendant had fraudulently induced the plaintiff to
execute the deed, and was deemed to have known that a
different line had been marked by stakes and shown to
plaintiff, and ought, therefore, to have approached him if its
purpose was to claim the right-of-way over the new line
under the deed. Under the provisions of subsection 9
of section 155 of *The Code,* as amended by chapter 269 of
the Laws of 1889, the plaintiff's right of action accrued on
the discovery of the fraud (when he saw the defendant com-
pany engaged in constructing its line of road), and it was
not barred by the lapse of time until three years after such
discovery. I have not been able to discover any principle
of equity that deprives the plaintiff of the right thus plainly
given him by the letter of the statute.

The principle announced in *Knight* v. *Houghtalling,* 85
N. C., 31, which was cited in support of defendant's position,
has, I think, no application to this case. The defendant was
not induced, by the fraud or negligence of the plaintiff, or
his failure to give notice of his purpose, to expend such an
amount of money that it could not be put *in statu quo.* On
the contrary, the right of action did not accrue until the
defendant had carried out its original intent by actually
entering upon, appropriating and commencing work upon
the new line. An action brought after he surveyed, but

ALLEN *v.* RAILROAD.

before he occupied and began the construction of a new line, would have been dismissed, but a suit instituted the day after in the Superior Court in term for the purpose of cancelling the deed cou'd be maintained if the fraud could be established, as it was, and could be followed by a proceeding under the charter to assess the value of the right-of-way. To deprive the plaintiff of this right, on the ground that he had condoned the defendant's fraudulent conduct and concluded himself as to his own right to damages because he did not cause a summons to issue against the company at the earliest possible moment after its purpose was made apparent by beginning the work of ditching, filling or excavation, would be to encourage iniquity under the guise of doing equity, to pervert principles established by a Court of conscience, so as to make them shield a party who is admitted to have done an unconsciable act. Whatever might be the opinion of an appellate Court as to the weight of evidence, the findings of the jury cannot be reviewed by it. We must act upon the assumption that a fraud was perpetrated, and apply the principle of law accordingly.

*Per Curiam.*                                              Dismissed.