WILSON & SHOBER v. B. F. MOORE and others.

It is error to dismiss a complaint, because the defendants are summoned to answer the complaint of A and B alone, and the complaint is in the name of A and B and others.

Where the summons is to A and B in their individual capacity, and also as executors, and the complaint is against them as individuals and executors, and also as agents or trustees as well as stockholders, &c., it is error to dismiss the complaint.

Where a summons concludes with a demand of the relief demanded in the complaint, and the complaint shows a cause of action arising out of contract for the recovery of money only, and demands judgment for a specific sum, and for such other and further relief, &c., the complaint should not be dismissed.

This was a MOTION to set aside a complaint, heard by his Honor, *Judge Tourgee*, at Spring Term, 1874, of GUILFORD Superior Court.

At the return term of the summons and before answer filed, the counsel for the defendants moved to set aside the complaint filed by the plaintiffs in the cause, upon the following grounds:

1. For a variance between the summons and complaint, in that the summons commanded the defendant to answer the complaint of Wilson & Shober alone, while in the complaint they sue for themselves and in behalf of all others, the creditors and note holders of the Bank of the State of North Carolina, who will come forward and contribute to the expenses of the action.

2. For a variance between the summons and complaint, in that, the defendants B. F. Moore and Margaret B. Mordecai are sued in their capacity, respectively as an individual and as executrix of Geo. W. Mordecai, while in the complaint they are sued and judgment demanded against them not only on the ground of the individual liability of the said B. F. Moore and Geo. W. Mordecai, deceased, but also because they, the said Moore and Mordecai, had become liable to plaintiffs, as agents or trustees as well as stockholders, in connection with the other defendants.

3. That the summons concluded with a demand for the relief demanded in the complaint, while the complaint itself shows a cause of action arising on contract for the recovery of money only, and demands judgment so far as the plaintiffs in the summons are concerned, for a specific sum, and for such other and further relief, &c.

The plaintiffs insisted that the motion should not be granted for either of grounds relied on, but moved, in the event that either the first or second ground should be deemed sufficient to dismiss, to be allowed to amend the summons. This was refused by his Honor, who intimated that the plaintiffs might amend their complaint if they chose so to do. Plaintiffs declined to amend their complaint, whereupon it was adjudged by the Court that the complaint be dismissed.

From this judgment, plaintiffs appealed.

*Dillard & Moore,* for appellants.
*Gatling* and *Snow,* contra.

BYNUM, J. If this were an action at common law, began by general process, the plaintiff might have declared *qui tam* or the defendant might have been declared against, in his representative character. But the rule does not hold *e converso,* for if the process is, to answer the plaintiff *qui tam* and the declaration is in his own name only, the variance would be fatal. The rule was, that where the process was special, that is to answer the plaintiff suing in a particular capacity or calling upon the defendant to answer in some particular capacity, the declaration must conform thereto. But where the process is to answer generally, the declaration may be particular, and if against the defendant in several characters it does not contradict the general process, and is no variance. 1 Tidd's Pr. 450.

But in those cases where there was a variance between the writ and declaration, the rule was, not to move to set aside the declaration, as was done here, and for which there seems to be no precedent, but the motion was to abate the writ. The defendant craved *oyer* of the writ and if upon reading it the writ contained any conditions not contained in the declaration, he took advantage of the variance by plea in abatement of the writ. 3 Bl. 299 ; 2 Lil. Abr. 629.

But this indulgence having been abused and made an instrument of delay, the Courts of Common Law made a rule that *oyer* should not be granted of the original writ, which rule had the effect of abolising pleas in abatement, founded on facts which could only be ascertained by the examination of the writ itself. In consequence of this rule, it was afterwards held, that if the defendant demanded *oyer* of the writ, the plaintiff might proceed as if no such demand had been made. Doug. 227–'8 ; Bro. Abr. tit. Oyer, 692 ; 2 Ld. Raym. 970 ; 2 Wils. 97 ; Co. Inst. 320 ; Gilbert C. P. 52.

So if this was an action at Common Law the defendant's motion would fail ; 1st. because the matter alleged does not

constitute a variance; 2d. if it did it could only be used as ground of plea in abatement of the writ, and not of the declaration.

But under our new Constitution and Code, we have adopted substantially the practice and procedure of the Courts of Equity and not of the Courts of Common Law. In Equity the bill precedes the Subpœna, which issues to bring the parties defendant into court. The prayer of the bill is not "Your Orator, therefore, prays that he may have such and such relief; but it is ' to the end therefore that the defendants may answer the interrogatories and that your Orator may have the specified relief, may it please your Honor to grant a writ of subpœna requiring the defendant to appear by a certain day and answer the bill, and abide by the decree of the Court." Adams Eq. 309. The subpœna is used to designate and bring the parties into court only, it neither specifies, as the old common law writ frequently *did* in what right the plaintiff claims relief; nor the right in which the defendant is sought to be charged. These matters are set forth in the bill only, and the subpœna points to the bill as containing the causes of suit which are to be answered. As then it is clearly not the office of the subpœna to specify the plaintiffs claim or the defendants liability, there can be no such thing as a variance on that account; and such a motion as the present is an unheard of proceeding in Equity and would not be there tolerated.

The only difference between the practice under the Code, and in the Court of Equity is, that by the Code the summons does not *follow* but *precedes* the complaint. "It shall command the sheriff to summon the defendant to appear at the next ensuing term of the Superior Court to answer the complaint of the plaintiff." Bat. Rev., chap. 17, sec. 2; C. C. P., sec. 73. In both Courts its only operation and office is to give notice of an action begun, the parties to it, and where the complaint will be filed.

In our case these purposes have been answered and the defendants have had every privilege allowed by the regular course

of the court. Their objections seem captious, and for the evident purpose of delay.

The whole scope and design of the new Code is, to discountenance all dilatory pleas, and to afford the parties a cheap and speedy trial, upon the merits of their matter in controversy. To effect this end it is the duty of all the courts to allow amendments in the liberal spirit clearly indicated in the Code. C. C. P., secs. 128 to 136. There is error.

PER CURIAM.          Judgment reversed and case remanded.