The following statement of facts, taken from the defendant's brief, substantially states the case:
On 1 February, 1896, Joseph Cobb executed to the defendant Webb a mortgage deed conveying a tract of land to secure the payment of a note for $1,000 due 1 January, 1897, with authority to sell for cash on default in the payment of said note, "and apply the proceeds of sale to the payment of the note and interest, and the surplus, if any, to the said Joseph Cobb, or to his heirs."
On 5 June, 1896, the plaintiff recovered four several judgments against the said Joseph Cobb in a justice's court of said county, and on *Page 56 
the same day caused them to be duly docketed in the office of the clerk of the Superior Court of said county.
That the amount due said Webb on the aforesaid mortgage indebtedness on 2 December, 1900, date of sale under said mortgage, was $1,290.16, and the amount due plaintiff on said judgments on that day was $558.57.
That the said Webb was unable to secure a cash purchaser for said land, so it was finally agreed between him and the said Cobb that the land should be sold on a credit of three years; that at the same time it was further agreed between said parties that in consideration of the labor and efforts of the said Webb to find a credit purchaser at a price in excess of the mortgage debt, that such excess bid should be applied to an unsecured indebtedness of $800 of the said Cobb to the said Webb; that said land was sold in accordance with said agreement on 2 December, 1900, on these terms; $250 cash; $500 payable 2 December, (37) 1901; $500 payable 2 December, 1903, and $500 payable 2 December, 1904.
Deed was made to the purchaser on his making the cash payment and executing a mortgage on the land to secure the deferred payments. At the time of the mortgage sale, and the making of the aforesaid agreement with Cobb, the said Webb had no knowledge of the judgments in favor of the plaintiff.
That of the cash payment of $250 the said Webb disbursed $2.25 for stamps and recording deed to the purchaser, and paid attorneys $20 for preparing the papers between Webb and the purchaser. That Webb has received on said purchase, mortgage and notes only the following amounts: $50, 21 October, 1901; $50, 2 December, 1901; $100, 6 October, 1902, and $200, 6 January, 1904.
The plaintiff contends that he is entitled to the payment of his judgment debt after satisfaction of the mortgage. The defendant contends that he is also entitled to the payment of his unsecured debt in accordance with his agreement with the mortgagor.
The court below adjudged that the defendant was entitled to the balance of the principal and interest of his mortgage debt, together with the necessary expenses of the sale, exclusive of attorney's fees, and that the plaintiff was then entitled to the payment of his judgment debt, which exhausted the fund. The court also appointed a receiver and directed the defendant to turn over to him the unpaid note given for the purchase of the land. The defendant appealed.
After stating the case: The defendant filed three exceptions. The first is that by the form of the complaint this is an action "for money had and received," and as such cannot be maintained unless the money has been actually received by the defendant. (38) This exception cannot be maintained, whatever might have been its merit under the old common-law practice before the adoption of the Constitution of 1868. Section 1 of Article IV provides that "The distinction between actions at law and suits in equity, and the forms of all such actions and suits, shall be abolished; and there shall be in this State but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action; and every action prosecuted by the people of the State as a party against a person charged with a public offense, for the punishment of the same, shall be termed a criminal action. Feigned issues shall also be abolished, and the fact at issue tried by order of court before a jury."
Section 133 of The Code is as follows: "The distinctions between actions at law and suits in equity and the forms of all such actions and suits heretofore existing are abolished, and there shall be hereafter but one form of action for the private wrongs, which shall be denominated a civil action." Section 223 provides that "The complaint shall contain (1) the title of the cause, specifying the name of the court in which the action is brought, the name of the county in which the trial is required to be had, and the names of the parties to the action, plaintiff and defendant; (2) a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition, and each material allegation shall be distinctly numbered; (3) a demand of the relief to which the plaintiff supposes himself entitled; if the recovery of money be demanded, the amount thereof must be stated." Section 260 is as follows: "In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view of substantial justice between the parties."
It is evident from these provisions that the Code of Civil Procedure (39) was neither a modification nor a simplification of any of the common-law modes of procedure. It practically abolished all the common-law forms of action, and adopted the old equity practice, with some slight modifications, the principal one being that in The Code practice the summons precedes the complaint, while in equity the subpoena follows the bill. Wilson v. Moore, 72 N.C. 558. A brief glance at the methods of procedure in actions at law before the adoption of the Code of Civil Procedure will show how complete is the change. In this State the courts followed the practice of the Court of King's Bench in *Page 58 
England. Much space and learning were expended upon the nature and requisites of the different pleadings, but in actual practice the method was of the simplest kind. The action was begun by an "original writ" commanding the sheriff to "take the body of C. D. (if to be found in your county) and him safely keep so that you have him before the justices of our Court of Pleas and Quarter Sessions to be held, . . . then and there to answer A. B. of a plea of trespass on the case to his damage ............ dollars." If the action lay in debt or covenant or any other form of action, the only change made was to insert in lieu of the words "trespass on the case" the words "that he render unto him the sum of ........... dollars, which he owes to and unjustly detains from him"; or a "breach of covenant," as the case might be. Eaton's Forms, 44. Under this writ the sheriff took the defendant into custody, unless belonging to some exempted class, such as a woman or an administrator, and held him to bail, or himself became special bail. The plaintiff was supposed to file a declaration, which in fact was rarely if ever done, the mere indorsement of the nature of the action on the back of the writ being deemed a sufficient compliance with the rule in the absence of a specific demand. The defendant was also expected to plead, (40) which was usually done by his counsel merely marking upon the docket the nature of his pleas in a contracted form. Whatever it may have been in theory, the usual entry was about as follows: "Genl. issue, Payt. and set-off, Stat. Lim. with leave." The last two words mean leave to plead any other defense that may chance to occur to the pleader, such as nil debit, accord and satisfaction, non est factum, or the like. In ejectment, a form of trespass wherein the general issue was "not guilty," the procedure was more complicated, but even in that action Mr. Eaton feels called on to say: "The practice which prevails in North Carolina of trying actions of ejectment with no declaration on file but that against the casual ejector is very irregular." The force of this remark is apparent when we recall that the casual ejector had no actual existence, being purely a fictitious personage, the airy phantom of judicial imagination.
In the old system the principal difficulties lay in deciding upon the proper form of action and the danger of encountering, during the trial, some equitable rights that could not be adjusted in that court. The fact that the courts of law and equity were held by the same judge at the same place and during the same week did not prevent them from being separate and distinct courts, with subjects of jurisdiction and methods of procedure entirely different. It was to remedy these evils that the new system was adopted. Whether it comes up to the full measure of simplicity claimed for it by its most enthusiastic advocates, we are not *Page 59 
entirely prepared to say. We certainly do not desire to make any further complications, and in furtherance of its essential principles must overrule the exception.
The second exception is as follows: "That on the issues found by the jury the plaintiff was not entitled to the judgment rendered, for that it is found as facts (issues 5 and 6) that Cobb was indebted (41) to Webb in the sum of $800, and contracted with him that in consideration of his finding a purchaser for said land at a price in excess of the mortgage debt, such excess should be applied to said unsecured debt." This exception is based exclusively upon Norman v. Halsey,132 N.C. 6, but does not come within its essential principle. In that case it was held that a mortgagee who sells under a mortgage is not liable to a subsequent mortgagee or judgment creditor for the surplus paid by him to the mortgagor, unless he has actual notice thereof before such payment. It does not decide that he can retain any surplus in payment of a further and unsecured indebtedness of his own, which is the case at bar. As between him and the mortgagee, the judgment creditor is entitled to all the surplus proceeds of the sale after the payment of the mortgage debt, with such expenses only as are provided for in the mortgage, or are necessarily incident thereto. We are not aware of any principle that would permit the mortgagor to make a subsequent agreement with the mortgage by which he could give him the entire proceeds of the sale of the land to the exclusion of judgment creditors, under the guise of exorbitant commissions.
The third exception was to the refusal of the court below to allow an attorney's fee of $20. The exception cannot be sustained. Turner v. Boger,126 N.C. 300; 49 L.R.A., 590. If an attorney's fee cannot be allowed to a disinterested trustee when specially provided for in the deed of trust, we see no reason upon which it can be allowed to a mortgagee without proof of necessity or authority in the mortgage.
In the case at bar the complaint has no prayer for relief, but we think that it sets out the plaintiff's cause of action with sufficient clearness to indicate the proper relief. The complaint alleges that the defendant mortgagee has sold the mortgaged premises for more than (42) enough to pay his debt, and upon demand refuses to pay the surplus to the plaintiff in satisfaction of his docketed judgments. As there is no question as to legal exemptions, the evident relief is to require the defendant to pay over the surplus. The fact that the purchase price is in notes and not in money compels the intervention of a receiver to carry out the judgment. This is fully as much for the benefit of the defendant as for the plaintiff, as a resale of the land may be necessary, and the defendant would be entitled to the full payment of the principal and *Page 60 
interest of his mortgage debt before anything is paid to the plaintiff, if necessary, even to his entire exclusion.
It has been repeatedly held by this Court that no prayer is necessary where the appropriate relief sufficiently appears from the allegations of the complaint. In Knight v. Houghtalling, 85 N.C. 17, Ruffin, J., speaking for the Court, says: "We have not failed to observe that the answer of the defendants contains but a single prayer for relief, and that for a rescission of the contract. But we understand that under The Code system the demand for relief is made wholly immaterial, and that it is the case made by the pleadings and facts proved, and not the prayer of the party, which determines the measure of relief to be administered, the only restriction being that the relief given must not be inconsistent with the pleadings and proofs. In other words, the court has adopted the old equity practice, when granting relief under a general prayer, except that now no general prayer need be expressed, but is always implied." In Demsey v. Rhodes, 93 N.C. 120, Merrimon, J., speaking for the Court, says: "Indeed, in the absence of any formal demand for judgment, the Court will grant such judgment as the party may be entitled to have, consistent with the pleadings and proofs." See, (43) also, Harris v. Sneeden, 104 N.C. 369; Gattis v. Kilgo, 125 N.C. 133; Clark's Code, sec. 233 (3).
While a formal prayer for relief may not be necessary, we would, however, advise our brethren of the bar to comply with the express requirements of section 233 of The Code, as there is always a certain element of danger attending experimental pleading. The judgment of the court below is
Affirmed.
Cited: Bryan v. Canady, 169 N.C. 582; Public Service Co. v. Power Co.,180 N.C. 348.