VOORHEES v. PORTER.

(Filed April 5, 1904).

1. PLEADINGS—*Contracts—Guaranty.*

In this action the complaint contains facts sufficient to constitute a cause of action.

2. PLEADINGS—*Judgment—Complaint.*

If a plaintiff states facts sufficient to entitle him to any relief it will be granted though there be no formal prayer for judgment corresponding therewith.

3. CONTRACTS—*Parties—The Code, sec. 177.*

A creditor may sue directly a party holding funds which the debtor has dedicated to the payment of claims of such creditor.

4. GUARANTY—*Contracts.*

Where the purchaser of goods agreed, in consideration of the transfer, to pay the debts of the seller, and a third person covenanted that the purchaser should faithfully perform the contract, such person was an absolute guarantor of payment, and a creditor of the seller might sue him without first proceeding against the principal.

5. ASSIGNMENTS FOR THE BENEFIT OF CREDITORS—*Sales.*

The creditor of one who had sold a stock of goods in consideration of purchaser's promise to pay his debts is entitled to recover from the assignee for the benefit of creditors under an assignment by the purchaser.

ACTION by Voorhees, Miller & Company against J. A. Porter, heard by *Judge E. B. Jones* and a jury, at September Term, 1903, of the Superior Court of BUNCOMBE County.

Action to recover a debt due to the plaintiff by C. D. Blanton, and for that purpose (1) to set aside an assignment by him to J. D. Brevard alleged to be fraudulent; (2) to

enforce a trust as to certain funds in the possession of Bre-
vard under a contract with Blanton that he would pay the
same to Blanton's creditors, and (3) to recover against J.
A. Porter and J. B. Bostic the amount of plaintiffs' debt
upon their covenant given to Blanton by which they guar-
anteed a performance of said contract by Brevard and the
payment of the money by him to the creditors.

In November, 1892, Blanton was indebted to the plain-
tiffs in the sum of $3,445.50 for goods sold and delivered,
and for which Blanton gave the plaintiffs his two several
promissory notes with Cobb, Bostic and W. M. Blanton as
sureties. Plaintiffs obtained judgment on these notes in
the Federal Court, but were unable to collect any part of the
amount due upon the judgment because of the insolvency of
the defendants. On December 30, 1903, Blanton executed
to J. D. Brevard an instrument in writing, by which he sold
and conveyed to him his stock of goods, wares and merchan-
dise at their cost, less 12 1-2 per cent., and in consideration
thereof Brevard agreed that, after retaining $3,000 to pay a
debt due to him from Blanton, he would hold the purchase-
money and apply the same to the payment of (1) all debts
due by Blanton on which Brevard is surety or endorser, (2)
all the other debts owing by Blanton upon which Bostic or
Cobb is surety. It was then provided that the surplus, if
any, should be paid to Blanton. On the same day Bostic
and Porter executed their guaranty, by which they agreed
that Brevard should "faithfully keep and perform all the
covenants and agreements to be by him kept, done and per-
formed according to the terms of the foregoing contract,
dated this day, between him and Blanton, and that he will
pay faithfully the price of the goods sold to him by said
contract according to the terms thereof and as therein stated,"
and they did "jointly and severally guaranty such perform-
ance and payment." There was a provision in the contract

between Blanton and Brevard that the goods sold and conveyed to Brevard should be inventoried so as to describe and identify the goods more definitely, and so as to ascertain the exact amount of the purchase price to be held by Brevard for the creditors and to be paid to them. An inventory was accordingly made and the net amount of the purchase-money ascertained to be $18,158.47. On March 3, 1904, J. D. Brevard made a general assignment to J. A. Porter of all his property for the benefit of his creditors. There was evidence tending to show the execution of the several instruments above mentioned and also to show that Cobb, Bostic, C. D. Blanton and W. N. Blanton are insolvent. The plaintiffs allege that Porter had received the property assigned to him by Brevard and sold it, and had failed to execute his trust by paying the proceeds of the sale or the price of the goods to the creditors of Brevard as required to do by the assignment, and "that neither the said Brevard, the said Bostic nor the said Porter has ever paid anything to the plaintiffs, although the plaintiffs were entitled to be paid by virtue of the terms of said contract and although they have repeatedly demanded payment;" and that while the assets received by Porter under the assignment amounted to $30,000, he has not paid out exceeding $5,000 to the creditors of Brevard, nor has he accounted for the proceeds of sale received by him as it was his duty as assignee to do. The defendants in this suit are Bostic, Cobb and Brevard, and J. R. Porter individually and as assignee of J. D. Brevard. The prayer of the complaint is as follows: "1. That the deed of assignment from the defendant J. D. Brevard to the defendant J. A. Porter be declared to be fraudulent and void, and that the said Brevard and Porter account for the said assets and proceeds thereof. 2. For judgment against the said Porter and the defendant J. B. Bostic upon

the contract mentioned in paragraph 7 of the complaint. 3. For such other and further relief, etc."

At the close of the plaintiff's evidence the defendant Porter, individually and as assignee of Brevard, moved to dismiss the complaint and for judgment as in case of nonsuit. Motion granted and plaintiffs excepted and appealed from the judgment.

*Merrimon & Merrimon,* for the plaintiff.
*F. A. Sondley* and *Tucker & Murphy,* for the defendants.

WALKER, J., after stating the case. It appears in the record that the Court below was of the opinion the plaintiffs could not recover because they were not in privity with the parties to the contract of December 30, 1902, by which Blanton conveyed his stock of goods to Brevard, and the plaintiffs therefore could not sue upon the contract, but were excluded from doing so by the rule laid down in *Morehead v. Wriston,* 73 N. C., 398, and *Peacock v. Williams,* 98 N. C., 324, and much of the argument in this Court was addressed to this feature of the case. It is also stated in the record that in the argument of the motion to nonsuit in the lower Court, the plaintiffs' counsel admitted that there was no cause of action for subrogation, nor was any such equity claimed by the plaintiffs under the contract between Blanton and Brevard of December 30th, and that counsel further argued that while said contract was a bill of sale it constituted Breveard a trustee of the purchase price for the purpose of paying it to the creditors of Blanton, and that the plaintiffs had a primary equity to have it so applied, and that to enforce that equity they could sue Brevard and Porter directly and also sue Porter on his guaranty hereinafter mentioned. It was argued by the defendants' counsel in this Court that "there is no allegation in the complaint of any contract between

Blanton and Brevard, to any extent, for the benefit of the plaintiffs," and that the plaintiffs in their pleading simply assert the right to follow the goods in the hands of Brevard as trustee and do not aver that Brevard is individually the creditor of the plaintiffs.

We simply mention these matters for the purpose of stating that we are not bound here by any argument that counsel made below. We hear the case upon the facts alleged in the pleadings, and if the plaintiffs have set forth in their complaint such facts as entitle them to relief they will not be restricted to the relief demanded in their prayer for judgment, but may have any additional and different relief which is not inconsistent with the facts so alleged in their complaint, it being the pleadings and the facts proved which determine the measure of relief to be administered. *Knight v. Houghtalling,* 85 N. C., 17. In this case it makes no difference, if such is the fact, that the plaintiff does not distinctly claim that the contract between Blanton and Brevard was for the benefit of the plaintiffs, and that he does claim only that Brevard held the goods in trust and makes no claim against Brevard individually. He simply sets forth the facts of the case according to his version of them, which is the proper way to do, and upon those facts he prays for an accounting from Brevard and Porter "for the said assets and the proceeds thereof," meaning the assets received under the contract and assignment, and for judgment against Porter and Bostic as guarantors of the performance by Brevard of the contract, and for such other and further relief as they may be entitled to have in the premises. We cannot therefore agree with the learned counsel for the defendants that the plaintiffs are not entitled to call for a showing from Brevard and Porter as to the administration of their several and respective trusts under the contract and assignment if the facts justify such relief, even though the plaintiffs may

not have made any special or particular claim for that relief. But it is our opinion that the facts are sufficiently set forth in the complaint to entitle them to such relief, and if Brevard and Porter have committed a breach of their trusts they are further entitled to judgment against them respectively for any damages they have sustained by reason thereof.

The case in one aspect of it turns upon the question whether the plaintiffs can sue Brevard for failing to pay over to them their share of the price he agreed to pay for the property sold to him by Blanton, and we are unable to see why he cannot do so. The case is not like *Morehead v. Wriston, supra*. In that case the substance of the agreement was that Wriston, the incoming partner, would indemnify the old firm against the payment of its debts, and this view of the case is fully explained and made clear by *Smith, C. J.,* in *Peacock v. Williams,* 98 N. C., 324, in which he says: "The agreement is, in substance, one for the indemnity of the owner of the property against its being subjected to the asserted lien, and is solely between the parties to it with whom the plaintiff is not in privity. Here there is no promise to pay the plaintiff, and the defendant has no funds with which to make the payment." It will be observed that the distinction between the cases arises out of the particular nature of the contract, whether it be one strictly of indemnity or one in which there is a direct and express promise to pay to the creditor the amount of his claim out of the funds placed in the hands of the party who is sought to be charged or which are held by him for that specific purpose. This doctrine that the creditor may himself sue directly the party so holding the funds which have been dedicated by the debtor to the payment of the claims of his creditors, is recognized in *Woodcock v. Bostic,* 118 N. C., 822, as is also the creditor's right to proceed in equity to have the fund applied, according to the intention of the

debtor and the agreement of the party who holds it, to the uses for which it was created, whether the right can be enforced at law or not. It is true the Court held in that case that the action was in form *ex contractu,* and that, as the guaranty of Ray to Settle and Bostic was not assignable, even to the plaintiff Mrs. Woodcock, the plaintiff could not recover, but there is a strong intimation that she could have recovered' if she had properly pleaded her equity or set forth facts upon which equitable relief could be based. When the Court said in that case: "She cannot have equitable relief, because she has prayed for none," it simply meant that there was no sufficient allegation of an equity upon which a prayer for such relief could be predicated, for we find it to be well settled by the decisions of this Court that, if the plaintiff in his complaint states facts sufficient to entitle him to any relief, this Court will grant it, though there may be no formal prayer corresponding with the allegations and even though relief of another kind may be demanded. *Knight v. Houghtalling, supra; Gillam v. Insurance Co.,* 121 N. C., 369. In the case last cited, *Clark, J.,* for the Court, says: "Under The Code the demand for relief is immaterial and the Court will give any judgment justified by the pleadings and proof"—citing numerous cases. Clark's Code (3 Ed.), p. 584, and notes to section 425.

In the case at bar all the facts, which in our opinion are necessary to constitute a good cause of action even in equity, are set forth, and besides the prayers for special relief there is a prayer for general relief, or, to be more accurate, for other and further relief than that specially demanded. If the plaintiffs by their pleadings and proof are entitled to recover against the defendants Brevard and Porter, even by way of subrogation, we would direct that relief to be administered notwithstanding that in the argument below the particular equity was not claimed but disclaimed, be-

cause we act in the adjudication of rights not upon arguments, but upon the pleadings and evidence when there has been an involuntary nonsuit as in this case, or upon the pleadings and findings of the jury when there has been a verdict, the arguments of counsel being only intended to aid us in understanding the case, and not being in any sense an estoppel upon counsel or the party whom he may represent. Parties are bound by admissions of facts but not by arguments or admissions as to the law. Arguments of counsel are exceedingly valuable in enabling us to ascertain the true principles of law upon which the decision of the cause in its last analysis must rest, and especially so when they are as searching, able and exhaustive as they were in the case at bar, and exhibit such a complete mastery by counsel of the facts and law of the case, but parties must not be concluded or prejudiced by any mistaken view of the law presented during the course of the argument in the lower Court or in this Court. A contrary course would result in our deciding the case not according to the law but according to the argument. We do not intend to imply, for we do not think that any admission has been made in this case *in arguendo* calculated to prejudice the plaintiffs, whose counsel may have chosen wisely and well among the several grounds of action open to him, and who may have selected the strongest one upon which to base his claim for relief.

It is not necessary that the plaintiffs should show in this case any right to equitable relief by way of subrogation. They contend that their equity, or more properly speaking, their cause of action, whether legal or equitable, is a primary and not a secondary one; that Brevard, as the consideration for the purchase of the goods, promised and agreed not merely to indemnify Blanton against any and all claims of his creditors, but to pay directly and immediately to his creditors, who are named in the contract and in order and

according to the classification therein stated, all of the said claims. This, the plaintiff's counsel argued, impresses a trust upon the purchase price of the goods in the hands of Brevard. Conceding this to be so, we do not see how the condition of the plaintiffs is improved by reason of it. If Blanton had placed in the hands of Brevard a fund for the payment of his debts, or if Brevard when he purchased the goods had set apart a certain fund in payment of the purchase price of the goods and for the purpose of paying Blanton's creditors, and if either of the funds, being capable of identification, had gone into the hands of Porter as assignee, the plaintiff or any other creditor of Blanton mentioned in the contract with Brevard could follow the fund in the hands of Porter and subject it to the payment of his claim. But such is not the case here. The purchase price of the goods consisted merely in the promise of Brevard to pay the claims of creditors, which he failed to do. While he is liable to Blanton or to his creditors for this breach of his contract, he did not assign to Porter any part of his property which can be said to represent a trust fund and which can be applied to the claims of Blanton's creditors in preference to the claims of other creditors secured by Brevard's assignment. In other words, the law will not compel the assignee to set aside for the benefit of Blanton or his creditors an amount equal to the inventoried value of the goods received by Brevard under the contract in payment of the purchase price of the goods.

But the plaintiffs are entitled to relief in another aspect of the case. In the first place, they are creditors of Blanton and are entitled to receive payment of their claims from Brevard under the provisions of the contract by which the latter purchased the goods and agreed to pay Blanton's debts, and being thus secured, and Brevard having failed to pay them the share to which they are entitled under the con-

tract, they have the right to call on Brevard for an account of the debts and liabilities of Blanton secured by the contract and of the amount of the purchase price applicable thereto, so as to ascertain the amount due from Brevard to them, and this amount they can recover from the assignee of Brevard if he has received any assets which should be applied to the payment of this debt. They acquired no priority by reason of the peculiar nature of Brevard's liability to them, but they occupied the same position that they would have held if they had been general creditors of Brevard at the time of the assignment. They are entitled, though, to have the assignee of Brevard account with them, so that it can be ascertained whether there are any assets in his hands which should be devoted to the payment of their claims against Brevard.

The plaintiffs are also entitled to recover from Porter, as guarantor, the amount due from Brevard under the contract with Blanton, and Porter may absolve himself from this liability if he has sufficient assets for that purpose, or reduce the amount thereof, if he sees fit to do so, by voluntarily paying the plaintiffs whatever is due them under the assignment, and if the plaintiffs cannot make the full amount due them under the Brevard contract out of Porter, they can recover the balance out of any assets in the hands of Porter as assignee which are applicable to the payment of their claims, and, conversely, if the assets in the hands of the assignee are not sufficient to pay their claims, then Porter, as guarantor, will be liable for the balance. But the plaintiffs may proceed against Porter in the first instance for the recovery of the entire amount or against the assignee for an account and settlement of his trust and the payment of the amount due to them, or they may proceed against both as they may be advised. See *Brown v. Bank,* 79 N. C., 244, as explained and distinguished in *Bank v. Alexander,* 85 N.

C., 352. As Porter covenanted that Brevard should faithfully perform the stipulations of his contract with Blanton and "faithfully pay the price of the goods sold to him by said contract according to the terms thereof," he is an absolute guarantor of payment as distinguished from a guarantor of collection, and the plaintiffs have the right to sue him immediately upon his default without first proceeding against and exhausting the principal. *Jones v. Ashford,* 79 N. C., 172; *Jenkins v. Wilkinson,* 107 N. C., 707; 22 Am. St. Rep., 911; *Hutchins v. Bank,* 130 N. C., 285; *Cowan v. Roberts,* 134 N. C., 415.

We have stated the general principles which we think are applicable to this case, and which, as we will now proceed to show, are sustained by recent decisions of this Court.

In *Shoaf v. Insurance Co.,* 127 N. C., 308; 80 Am. St. Rep., 804, it appeared that the plaintiff had received a policy of fire insurance from the Merchants Insurance Company, and while the policy was in force the defendant, the Palatine Insurance Company, re-insured all the outstanding risks of the Merchants Company. By the contract of re-insurance it was provided that no holder of a policy in the Merchants Company should be entitled to enforce the contract against the Palatine Company, but that they should sue the Merchants Company alone, and the Palatine Company agreed to pay all claims legally arising and duly proved against the Merchants Company, and all costs and expenses of litigation. In that case the Court held that the plaintiff, whose property had been destroyed by fire and who had complied with the terms and conditions of his policy, was entitled to recover against the Palatine Company. The Court thus states the reason for its decision: "The plaintiffs were neither a party to nor in privity with said contract. The question is, have they an interest in or arising out of the contract? The defendant

is bound to indemnify the re-insured for all risks and loss, and the re-insured at the same time is bound to indemnify the plaintiffs for risks and loss. Does the defendant's liability inure to the benefit of the plaintiffs, and if so can the plaintiffs directly enforce their claim for loss against the defendant? The unearned premium at the date of the contract was a part of the consideration passing to the defendant for its risk and liability assumed. In this unearned premium the plaintiffs had an interest at the time of the re-insurance. The principle, sanctioned by several respectable authorities, is this: "If A, on receipt of a good and sufficient consideration, agrees with B to assume and pay a debt of the latter to C, then C may maintain an action directly on such contract against A, although C is not privy to the consideration received by A. The case before us seems to come within the same principle. Our Code, section 177, provides that every action must be prosecuted in the name of the real party in interest. In all the cases close attention is given to the language of the agreement. In the present case the defendant expressly assumes the liability in case of loss, but agrees to pay to the Merchants Company only after claims have been duly proved in an action against the Merchants Company. We can see no reason why the plaintiffs may not do directly that which it must be admitted they can do indirectly, nor do we see how the defendant is prejudiced thereby. The defendant suggests no such danger, but relies solely upon the ground that it has no contract with the plaintiffs."

Our case is stronger than the one just cited, for Brevard expressly promised to pay to the creditors of Blanton, and his promise was based upon a good and sufficient consideration.

In *Gorrell v. Water Co.*, 124 N. C., 328; 46 L. R. A., 513, 70 Am. St. Rep., 598, the plaintiff sued the defendant, The

Water Supply Company, for damages to property alleged to have been caused by the negligent failure of the defendant to furnish water and a sufficient pressure at its hydrants for the purpose of extinguishing a fire which destroyed her property, the defendant having previously entered into a contract with the city of Greensboro, where the property was situated, to supply said city with water for extinguishing fires and for other purposes. In passing upon a demurrer to the complaint this Court, through the present Chief Justice, said: "One not a party or privy to a contract, but who is a beneficiary thereof, is entitled to maintain an action for its breach. This has been sustained by many decisions elsewhere" (citing numerous cases from other States), 124 N. C., at page 333.

But still more to the point is the case of *Gastonia v. Engineering Co.,* 131 N. C., 363, in which it appeared that one of the defendants, the Engineering Company, undertook to construct for the plaintiff, the Town of Gastonia, "a water-works, sewerage and lighting system," and the other defendant, the American Surety Company, by a bond given for the purpose, guaranteed the performance of the contract by its co-defendant. The plaintiffs, other than the Town of Gastonia, sued the defendants for work and labor performed for and materials furnished to the Engineering Company in the construction of the works under their contract. The Court held that the contract of the Engineering Company was made for the benefit of the persons who performed the labor and furnished the material, and, as there was an express provision for the payment of their claims they were the beneficiaries of the contract, and that they either singly or collectively could sue the Engineering Company and its surety and recover the amounts due to them respectively. The Court distinguishes the case of *Morehead v. Wriston* from the case then under review, by the fact

that in the former case there was no indication of any intent of the parties that the creditors of the old firm should have any benefit under the contract, the contract in that case being one strictly of indemnity. In *Lacy v. Webb,* 130 N. C., 545, it is said: "If the State had been nothing more than the beneficiary of the bonds, it could maintain this action, and 'it is not the case either of subrogation or substitution.' The party, in other words, for whose benefit the contract is made, is the real party in interest under The Code, and sues in his own right and not in another's right to which he is subrogated by any principle of equity, and especially is this true when the money due under the contract is made payable directly to him."

But we think the case of *Mason v. Wilson,* 84 N. C., 51, 34 Am. Rep., 612, is directly in point. The doctrine there stated is that if a third person promises the debtor to pay his antecedent debts in consideration of property placed in the hands of the promisor by the debtor for the purpose, which is afterwards converted into money, the creditors may recover on the promise or for money had and received, "for although," says the Court, "the promise is in words to pay the debt of another, and the performance of it discharges that debt, still the consideration was not for the benefit or ease of the original debtor, but for a purpose entirely collateral, so as to create an *original* and *distinct* cause of action," and it is immaterial, as is further said by the Court, whether the liability of the original debtor is continued or not, the promise being an independent and original one founded upon a new consideration and binding upon the promisor. In our case, though the property was not received for the purpose of being converted into money in order to pay the debt out of the proceeds, the promise to purchase it at a fixed price and to pay the amount of that price to the creditors of the vendor amounts to the same thing, and brings our

case within the principle of the third class mentioned in *Mason v. Wilson* (which authorizes the creditor to sue directly), namely, "when the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the original contracting parties." In such a case the creditors may sue the promisor, whether his debtor remains liable to him or not. *Threadgill v. McLendon,* 76 N. C., 24; *Stanly v. Hendricks,* 35 N. C., 86. In *Draughan v. Bunting,* 31 N. C., at page 13, *Pearson, J.,* for the Court, says that a new and distinct cause of action of the creditors against the third person, who receives money or the proceeds of property from the debtor to pay his debt, arises out of the promise which is implied by law from the receipt of the money or the proceeds of the property to pay the debt, and that the creditor may sue directly on this promise. In our case Brevard bought the property, and expressly promised, as the consideration of the purchase, to pay the debts of Blanton, and the two cases are therefore in principle the same. In *Threadgill v. McLendon, supra, Pearson, J.,* for the Court, says, substantially, that when a party receives property for another upon a promise to pay that other's debt, the creditor can sue and recover, not on any promise implied from the receipt of the property, but on the direct and express promise to pay the amount of the debt. The promise is binding and inures directly to the benefit of the creditor, because the promisor has received the consideration and, in justice, should be made to perform his undertaking.

It was suggested on the argument, by the plaintiffs' counsel, that the goods bought by Brevard from Blanton were charged with a trust in the hands of Brevard in favor of Blanton's creditors, and it seems that some Courts have so held the law to be. *Kaiser v. Wagoner,* 59 Iowa, 40; *Hamilton v. Barricklow,* 96 Ind., 398. We do not know

to what extent the Courts in making those decisions were influenced by the doctrine of the vendor's lien, which is an equity not recognized by this Court.

Again, it may be that if Brevard was insolvent when the sale to him was made, it would be void as against Blanton's creditors, and his assignee in that case would have to account for the goods to such of Blanton's creditors as are mentioned in the contract if the goods went into his hands. But there is no evidence of Brevard's insolvency at that time. It is not necessary though that we should pass upon those two questions even if they were distinctly raised in the record, as the plaintiffs may be able to recover the amount of their claims from Porter upon the principles already stated, and the other matters may not be presented if the case should come back to us again.

We are of the opinion, upon a review of the whole case, that the plaintiffs have stated in their complaint a good cause of action against Brevard and Porter, and that there was evidence to sustain it. The Court erred in its ruling. The judgment of nonsuit must be set aside and a new trial awarded.

New Trial.