CARSON *v.* BUNTING.

J. J. CARSON v. J. R. BUNTING AND SOUTHERN OIL COMPANY.

(Filed 5 April, 1911.)

1. Appeal and Error—Issues of Fact—Questions for Jury.

In the defendant's appeal it appears that the jury found for plaintiff upon matters of fact properly submitted, and no error is found.

2. Contracts—Sale of Fertilizer—Damages to Crop—Vendee's Duty —Knowledge.

The plaintiff brings his action to recover damages to his crop arising from a breach by defendant of its contract to furnish him with a certain quality of cotton-seed meal to be used as a fertilizer, and acknowledged that he discovered the defects in time to have procured other fertilizer of the kind required, which he could have obtained: *Held*, it was incumbent upon plaintiff to avoid any damages arising from defendant's failure to properly perform his contract, and he could not recover the damages sought in this action.

3. Penalty Statutes—Violation—Amount—Legislative Discretion.

The penalty prescribed by Revisal, sec. 3956, relating to sales of fertilizers, is a matter resting within the legislative discretion, and is prescribed as a punishment to enforce the execution of the law, in addition to compensation recoverable for the damages sustained.

**4. Penalty Statutes—Judicial Notice—Pleadings—Proof.**

Section 3956 of the Revisal imposes a penalty for the violation of the law by those selling fertilizers, for protection to the farmers in their use, and, being a public statute, the courts will take judicial knowledge thereof and permit a recovery thereunder, though not specially pleaded, when there is allegation and proof that section 3957, relating to the sale of cotton-seed meal as a fertilizer, has been violated.

**5. Same—Cotton-seed Meal.**

When there is allegation and proof that one selling to the user cotton-seed meal as a fertilizer has failed to show, by branding on the bags or tags attached, the amount of ammonia or nitrogen, or the name of the manufacturer, as required by Revisal, sec. 3957, the penalty prescribed by section 3956 is recoverable, though this section be not pleaded. The demand for relief is immaterial, and a judgment should be rendered as justified by the pleadings and proof.

**6. Same—Relief Demanded.**

Upon allegation and proof that defendant has sold plaintiff cotton-seed meal to be used by the latter as fertilizer, without branding or tagging the bags as required by Revisal, sec. 3957, the fact that the plaintiff demands relief under section 3960 does not prevent his recovery of the penalty prescribed by section 3956.

WALKER, J., concurring; BROWN, J., dissenting.

'APPEAL by defendants from *Ward, J.,* at December Term, 1910, of PITT.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Jarvis & Blow and Harry Skinner for plaintiff.*
*L. I. Moore for defendants.*

CLARK, C. J. The complaint alleges three causes of action:

1. For shortage in the quantity and quality of cotton-seed meal purchased from the defendant. On this issue the plaintiffs recovered $150, and the defendant appealed.

2. The second cause of action is for the penalty prescribed in the statute in selling the cotton-seed meal without having branded or tagged thereon the data required by the statute.

3. The third cause of action was for injuries sustained by

CARSON *v.* BUNTING.

the plaintiff's crop by reason of defendant's failure to deliver the quantity and quality of cotton-seed meal as set out in the first cause of action. On the last two causes of action the court instructed the jury to answer the issues in favor of the defendant, and the plaintiff appealed.

### DEFENDANT'S APPEAL.

It was admitted by the defendant, as to the first cause of action, that it contracted to exchange with the plaintiff cotton-seed meal for fertilizing purposes for cotton seed at the rate of 1,333⅓ pounds of meal for a ton of seed. There was evidence from which the jury found that the cotton-seed meal delivered was short in quantity and quality to the amount of $150. This was purely a question of fact, and we find no error in the trial, as to the defendant's appeal.

### PLAINTIFF'S APPEAL.

The third cause of action alleges shortage in the yield of the crop of plaintiff caused by the shortage in the quantity and quality of the cotton-seed meal, as alleged and found in the first cause of action. The plaintiff testified that he had ascertained the defective quantity and quality of the meal when he used it. His measure of damage is an abatement in the price. This has been allowed him on the first cause of action. He does not allege that he could not have bought other cotton-seed meal to have made good the deficiency. In fact, he admits in his evidence that he could have done so. He is not entitled to consequential damages for the resulting shortage in his cop. Knowing the deficiency, it was incumbent upon the plaintiff to have avoided any damages from the failure of the defendant to comply with his contract if he could have done so by reasonable and proper effort.

The second cause of action is for the recovery of the penalty of $10 per bag on 196 bags cotton-seed meal sold to plaintiff in violation of the provisions of the Revisal in regard to tagging and branding fertilizers and fertilizing material sold to others than manufacturers.

Revisal, 3957, prescribes: "All cotton-seed meal offered for sale, unless sold to manufacturers in manufacturing fertilizers, shall have plainly branded, on the bag containing it, or on a tag attached thereto, the following data: .

"1. Cotton-seed meal, with brand.

"2. Weight of package.

"3. Ammonia or nitrogen.

"4. Name and address of manufacturer."

It was alleged in the complaint and shown in the proof that the said 196 bags were not sold to a manufacturer for use in manufacturing fertilizers, but were sold to the plaintiff, who is a farmer, to be used for fertilizing purposes, and neither of said bags had stamped thereon the above designated data, and that neither was tagged as required by said section, in that the tags attached thereto did not contain the data required in the third and fourth items, to wit: (3) Ammonia or nitrogen. (4) Name and address of manufacturer.

Pell's Revisal, 3965 (Laws 1907, ch. 670), makes the same requirements with some additions, as to branding "any commercial fertilizer or fertilizing material," and Revisal, 3956, prescribes: "Every merchant, trader, manufacturer or agent who shall sell or offer for sale any commercial fertilizer or fertilizing material without having attached thereto such labels, stamps, or tags as are required by law . . . shall be liable to a penalty of $10 for each separate bag, barrel, or package sold, or offered for sale or removed, to be recovered by any person who shall sue for the same."

The evidence is plenary that this cotton-seed meal, 196 bags, was sold by the defendant to the plaintiff without compliance with above provisions of the statute. This statute is an exceedingly important one to the farmers of the State to prevent fraud and imposition upon them in the sale of fertilizers and fertilizing material. The requirement of a penalty for the violation of a statute is a matter which rests in the discretion of the legislative department, without reference to the amount of damages sustained. The penalty is for punishment to enforce the execution of the law, and is in addition to com-

pensation for the damages sustained. *Grocery Co. v. R. R.,* 136 N. C., 404; *Walker v. R. R.,* 137 N. C., 168.

The defendant contends, however, that the plaintiff has not brought himself within the provisions of the statute, in that he has asked for a penalty under section 3960, alleging failure to attach the tax tags, which showed the receipt of the taxes required by that section, while the evidence shows that the tax tags were in fact attached.

In an action for a penalty, the statute allowing the same, being a public one, need not be pleaded. *Currie v. R. R.,* 135 N. C., 536; *Comrs. v. Comrs.,* 101 N. C., 520. But the facts must be alleged upon which the statute authorizes the penalty. Upon the evidence the defendant failed to comply with the requirements of Revisal, 3945, 3956, and 3957, and it is alleged in the complaint that those sections are not complied with. There was *allegata* as well as *probata.* It is true that the complaint also alleges a failure to affix the tax tags as required by Revisal, 3960, and it was shown that these were in fact affixed.

It is also true that the complaint asked to recover penalties for failure to affix the tax tags, Revisal, 3960, but there is both allegation and proof of failure to comply with sections 3945, 3956, and 3957. It is well settled that "under The Code the demand for relief is immaterial, and the court will give any judgment justified by the pleadings and proof." See numerous cases cited, Clark's Code (3 Ed.), p. 584, and notes to section 425; *Walker, J., Voorhees v. Porter,* 134 N. C., 597; *Gillam v. Ins. Co.,* 121 N. C., 372. Upon the pleadings and proof the plaintiff is entitled to recover upon the second cause of action.

In defendant's appeal, No error; in plaintiff's appeal, on the second cause of action, Error; third cause of action, Affirmed.

WALKER, J., concurring: I concur in the opinion of the Court as delivered by the *Chief Justice,* but will add a few observations in regard to the form of the complaint and the construction of the statute or sections of the Revisal, relating

to penalties for not stamping fertilizers. It is so notorious that cotton-seed meal is a fertilizer and an article of commerce, that it would seem, at least, proper for us to take judicial notice of the fact without hesitation, and without waiting to be specially informed of the fact. But however this may be, the Legislature, in the section to which reference has been made, clearly recognizes it as such, and requires it to be so stamped as to show brand, weight, quantity of ammonia or nitrogen, and name and address of manufacturer. It is immaterial whether the stamp is required to show the same data as the stamp on other fertilizers, which, for the sake of convenient distinction, may be considered as strictly commercial. That is not the question. The statute (Revisal, sec. 3957) denominates cotton-seed meal a fertilizer, or at least as fertilizing material, and subjects it to inspection and disclosure of its contents just as other "fertilizers or fertilizing material." Stamping was considered just as necessary in the one case as in the other, the idea being to protect the unwary farmer against the purchase of spurious articles—to shield him from the impositions and fraudulent practices and devices of the wicked and designing manufacturer, for the law will interfere with none but the latter. The same reason for branding the one applied equally to the other, as the farmer can be defrauded in the sale of meal as well as if it were what is called commercial or standard fertilizer. The law does not deal so much with names as with things. The words "commercial fertilizer" are not used in the body of section 3945, but by the Revisers, in the title to the subchapter, and the data required by that section to appear on the label are the same in form as those which section 3957 provides shall be stamped on packages containing cotton-seed meal, except that "phosphoric acid and potash," not being ingredients of the meal, are substituted for "ammonia," which is one of its constituent elements. The language of section 3956, imposing the penalty, is general in its terms, and applies to the sale of "commercial fertilizers and *fertilizing material,*" without affixing the proper tags, labels, and stamps to the packages. The words "fertilizing

CARSON *v.* BUNTING.

material" certainly embrace cotton-seed meal, which is itself a fertilizer, if it is not within the meaning of the term "commercial fertilizer"; but it cannot well be doubted, I think, that it is. Commerce (in its larger sense) comprehends intercourse for the purposes of trade in any and all its forms, including the transportation, purchase, sale, and exchange of commodities between citizens of our country and those of other nations, and between the citizens of different States, or it may be localized, when it consists in trade, dealings, or mutual traffic within the limits of a State or between individuals in different communities, or even the buying, selling, and exchanging of articles between members of the same community. Black's Dict. (1891), p. 225. Webster defines it generally as "the exchange or buying or selling of commodities," without special regard to its territorial range or limit. Any commodity which is the subject of this sale, exchange, or barter can very properly be called "commercial," if there is any magic in the name or importance to be attached to it. But the language of the statutes is quite sufficient to classify cotton-seed meal with all other fertilizers in construing them for the purpose of ascertaining the real intention of the Legislature. The buyers are furnished precisely the same protection in the purchase of it as is done in the case of other fertilizers. This being so, it would seem to follow logically, and as the clearly expressed purpose of the Legislature, that persons or corporations selling cotton-seed meal should be subject to the same pains and penalties, under section 3956, when violating the provisions for labeling or stamping, as dealers in the other kinds of fertilizers described in section 3945, which section is expressed almost identically as section 3957, and at least substantially so. The language of section 3956 is broad enough to include cotton-seed meal within its penalizing provisions, and this was evidently the intention of the Legislature, for where there is the same reason, there should be the same law. But it suffices to say that section 3956, by its very words, penalizes the sale of any fertilizer or fertilizing material which is sold or exchanged for the ultimate purpose of being

used in the enrichment of the soil, where the bags or packages are not branded as required by sections 3945 and 3957. It is true that sections 3945 and 3956 are taken from the act of 1901, ch. 479, and section 3957 is a part of the act of 1903, ch. 339; but in this way the section penalizing the general offense of selling unstamped fertilizers was automatically extended to a new case arising and coming within its provisions, which is not unusual. When the law, by the act of 1903, declared that cotton-seed meal should be classed with other fertilizers and that the particular articles proposed to be turned into the channels or arteries of commerce should carry with them the badge of their purity, or, more properly speaking, their genuineness, there is no stretch of construction when we say that the then existing provisions of the law intended to safeguard the farmer against fraud and deceit in the sale of such commodities, so essential, not only to his, but to the general welfare, should be extended to such a case. If there is a general law punishing larceny, or deceit which is a form of stealing in disguise, should we say that it is not applicable to an act which is afterwards made a larceny or a criminal deceit? My own mind inclines the other way. We should so construe the law as not to disappoint the declared will of the people, when through their representative body—the Legislature—it is clearly expressed, although by different enactments. Our law punishes felonies and misdemeanors differently, drawing the dividing line between them; but will it not be admitted that as new felonies or misdemeanors are created by statute, they are subject to the provisions of existing laws in regard to their punishment? Or if a new offense is created, and a penalty had theretofore been imposed for like offenses, then that the penalty attaches to the new unlawful act, if it comes within the mischief? I must think so. But all the enactments were revised and compiled in 1905, and they appear in the Revisal of that year. I cannot better state my view than by adopting what I find in one of the best commentaries on the subject, 1 Lewis Sutherland Statutory Construction (2 Ed.), sec. 269: "Revision of statutes implies a reëxamina-

tion of them. The word is applied to a restatement of the law in a corrected or improved form. The restatement may be with or without material change. A revision is intended to take the place of the law as previously formulated. By adopting it the Legislature say the same thing, in effect, as when a particular section is amended by the words 'so as to read as follows.' The revision is a substitute; it displaces and repeals the former law as it stood relating to the subjects within its purview. Whatever of the old law is restated in the revision is continued in operation as it may operate in the connection in which it is reënacted. A subsequent statute revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must on principles of law, as well as in reason and common sense, operate to repeal the former. *Bartlett v. King,* 12 Mass., 545. Where a provision is amended by the form, 'to read as follows,' the intention is manifest to make the provision following a substitute for the old provision and to operate exclusively in its place. Does a revision import that it shall displace the last previous form; that it is evidently intended as a substitute for it; that it is intended to prescribe the only rule to govern? In other words, will a revision repeal by implication previous statutes on the same subjects, though there be no repugnance? The authorities seem to answer emphatically, Yes. The reasonable inference from a revision is that the Legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject-matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law."

The different provisions of a revisal of the laws must be construed together so as to harmonize them and give effect to each, without regard to their consecutiveness, but with special regard to the fact that they relate to the same subject-matter, and tend to one common end or purpose. Lewis' Sutherland Statutes and

CARSON *v.* BUNTING.

St. Const., sec. 268. "Where two statutes *in pari* materia, originally enacted at different periods of time, are subsequently incorporated in a revision and reënacted in substantially the same language, with the design to accomplish the purpose they were originally intended to produce, the times when they first took effect will be ascertained by the courts, and effect will be given to that which was the latest declaration of the will of the Legislature, if they are not harmonious." *Ibid.,* sec. 281. But these acts are harmonious, for they have a common and general purpose to prevent frauds upon the innocent farmer, who, however intelligent and wise he may be, can be easily duped and deceived by hidden defects in fertilizers, and thereby lose, not only his crop, but all the cost and labor of making it. This is the reason for imposing a penalty for the willful deceit, and it is just and right under the circumstances. An honest farmer should not be made to lose the fruit of his sweat and toil by the deliberate fraud of the dishonest manufacturer, and a State, if it permits such a miscarriage of justice, fails in its duty to those under its protection. It is a law to protect the innocent against the evil designs of those who are willing to take advantage of them, and we should so construe it, without laying any particular stress upon the order in which the sections are placed in the Revisal, or the arbitrary division of titles, which should be confined to its only purpose—the convenience of reference.

The complaint is sufficient in substance to permit a recovery for the penalties imposed by section 3957. It states the facts which bring the plaintiff's case within section 3957, the violation of which is denounced with a penalty by section 3956. The mere fact that the plaintiff asks for other relief does not deprive him of that to which the facts he alleges entitle him to have. *Knight v. Houghtalling,* 85 N. C., 17; *Voorhees v. Porter,* 134 N. C., 591; *Silk Co. v. Spinning Co., ante,* 421; Clark's Code (3 Ed.), sec. 233, pp. 200 and 201 and notes. It is too late now to question the well-settled rule of pleading and procedure. It applies to all kinds of actions, even actions for penalties. We are bound to take notice of public statutes

and their provisions, and to give relief in cases in accordance with them. We must also bear in mind that the common-law system of pleading, with all its technicalities and refinements, has been swept away, at least so far as its forms and fictions are concerned, and we hear cases now upon their real merits and administer rights and award relief accordingly.

The suggestion that the defendant is indictable and has been indicted and convicted for this same offense is without any force, when we know that a violation of the other sections for selling unstamped fertilizers is a misdemeanor and also subject to a penalty by Revisal, sec. 3822; and that section, by the way, brings the unlawful sale of all fertilizers required to be branded under one and the same condemnation of the law, showing that the Legislature regarded cotton-seed meal as being in the same category with all other fertilizers.

Penal statutes should be construed strictly—this is elementary; but, at the same time, and with equal reason, they should be construed sensibly and reasonably, so as to fulfill the object of the law, and not to defeat it. The fact that section 3956 precedes section 3957 does not require us to decide that its penal provisions are not, therefore, applicable where there has been a violation of section 3957. They are both but parts of one compilation of the laws, *in pari materia,* and intended by the Legislature to be construed together. Section 3822 of the Revisal, making it a misdemeanor to sell fertilizers or fertilizing material without having tags or labels attached thereto as required by law, was a part of chapter 479 of the Laws of 1901, and we have held at this term, in *State v. Cotton Oil Co., post,* that the fact of the passage of that act before the act of 1903, ch. 339 (Revisal, sec. 3957), did not take that case out of the provisions of the former section, and a conviction for selling without labels was sustained. Even a cursory reading of that case should convince us that we have already decided the question involved in this one against the present contention of the defendant. It is there said in so many words that section 3956 subjects to a penalty any one selling cotton-seed meal in violation of section 3957, and that the penal and

punitive clauses of that section apply alike to the sale of all kinds of fertilizers required to be labeled. The failure to attach the tax tags, under section 3960, is subject to a separate penalty, and a penalty for the same kind of offense is imposed as well in the case of all other fertilizers. It is a distinct subject of regulation to prevent the State from being defrauded of its revenue. Our recollection is that counsel did argue that they were not confined to a recovery of that penalty, but that plaintiff is entitled to the relief which is fitted to the facts alleged in his complaint; and this, as we have seen, is a correct proposition of law.

My apology, if one is needed, for a discussion of this subject must be found in its great importance to the public, for whose benefit and protection these statutes were passed.

My conclusion is that the judgment should be modified, as stated in the opinion of the Court.

BROWN, J., dissenting: I concur in the opinion of the Court except as to the second cause of action. As to this I am constrained to dissent. This cause of action is set out in the complaint in these words:

"For a second cause of action the plaintiff, complaining of the defendants, alleges:

"1. That of the 274 bags of cotton-seed meal sold and delivered to the plaintiff, as set out and explained in the plaintiff's first cause of action, 196 bags had tags attached thereto, which contained only these words, to wit: '1909, Department of Agriculture, North Carolina, 100 pounds of Cotton-seed Meal. Charges paid. S. L. Patterson, Commissioner.' A copy of this on said 196 bags is hereto attached as an exhibit.

"That section 3957 of the Revisal of 1905 provides: That all cotton-seed meal offered for sale, unless sold to manufacturers for use in manufacturing fertilizers, shall have plainly branded on the bag containing it, or on a tag attached thereto, the following data:

"1. Cotton-seed meal, with brand.

"2. Weight of package.

"3. Ammonia or nitrogen.

"4. Name and address of manufacturer.

"That the said 196 bags were not sold to a manufacturer for use in manufacturing fertilizers, but were sold to the plaintiff, who is a farmer, to be used for fertilizing purposes; that neither of said bags had stamped thereon the above designated data, and that neither was tagged as required by said section, in that the tags attached thereto did not contain the data required by the 3d and 4th items, to wit:

"3. Ammonia or nitrogen.

"4. Name and address of manufacturer.

"2. That section 3960 of said. Revisal provides, among other things:

"That any person or persons, firm or corporation, who shall sell or offer for sale any cotton-seed meal without having the proper tax tag attached thereto, shall be liable to a penalty of $10 for each separate bag or barrel or other package sold or offered for sale, to be recovered by any person who may sue for the same.

"That plaintiff avers that defendants did actually sell to him 196 bags of cotton-seed meal without having the proper tax tag attached thereto, as alleged and set out in the preceding paragraph, and the plaintiff now claims and sues for said penalty.

"Wherefore, plaintiff now demands judgment against the defendants for the sum of $1,960 on this cause of action."

It is admitted in the complaint and is proven by all the evidence that the tax tags were attached to the 196 bags.

These tax tags are issued by the Agricultural Department as a method of collecting the tax levied by law as an inspection tax.

The statute, Revisal, 3960, upon which this cause of action is based gives the penalty solely for failure to affix the tax tag, and not for failure to stamp the formula on the bag.

The tax tag is issued by the State when the tax is paid, and as a method of collecting the tax. There is no law requiring the formula to be printed on it, but that may be stamped on the bag or on a separate tag.

The Court seems to be of opinion that plaintiff cannot recover the penalty upon the section 3960 sued on and copied in the complaint, but may recover it under section 3956.

It is singular that the astute counsel for plaintiff never made any such claim either in his brief or argument, but relied solely on the cause of action stated in his complaint.

There are two objections to a recovery of penalties under section 3956:

1st. It constitutes a different cause of action from the one sued on, and therefore the defendant had no notice of any such claim. To recover that penalty requires more and different facts to be established. There are no pertinent allegations in the complaint, and a plaintiff cannot be permitted to sue for one penalty and recover another, simply because the different penalties happen to be similar in amount. It is axiomatic that proof without allegation is as worthless as allegation without proof.

The defendant company has not had an opportunity to make its defense under section 3956, as it was sued exclusively under section 3960.

2d. I am of opinion that plaintiff cannot recover under section 3956, had he based his cause of action on that section, because it is patent that this applies exclusively to "commercial fertilizers" and not to cotton-seed meal.

The General Assembly has divided this legislation under four heads, viz.: "commercial fertilizers"; "cotton-seed meal"; "commercial feeding stuffs," and "pure food." Sections 3945 to 3956 inclusive relate to commercial fertilizers exclusively; sections 3957 to 3961 (a) to cotton-seed meal; sections 3962 to 3968 to commercial feeding stuffs, and 3969 to 3978 to pure food. These different articles of manufacture are defined and classified in The Code under the above-named heads, and the regulations and penalties applicable to each are specified with particularity under each title and are separate and distinct from each other. Section 3956 belongs to the commercial fertilizer division and section 3960, upon which the plaintiff based his demand, to the cotton-seed meal division, which is a

food, but may· be used in fertilizing. The data required to be stamped upon cotton-seed meal, when sold for use as a fertilizer, is very different from the formula of ingredients required to be stamped upon commercial fertilizers.

It is true that this is an important matter to farmers, and therefore the General Assembly, while prescribing a penalty for failure to attach the tax tag, made it a misdemeanor, a crime punishable by fine and imprisonment, to fail to stamp each bag of cotton-seed meal with the ingredients prescribed by the statute. This defendant company has been convicted at this term of this offense and fined for it. It is hardly probable that the General Assembly intended to both penalize and punish by fine and imprisonment for the same omission.

The words used in section 3956 are "commercial fertilizer or fertilizing material," and the analysis required to be attached thereto is prescribed in section 3945 and has no relation to cotton-seed meal, as a very cursory reading of the statute will disclose, for it is a very different formula. Section 3956 gives the penalties for failing to attach to commercial fertilizers the analysis required to be placed on them by section 3945, and has no application to cotton-seed meal.

For these reasons I think the plaintiff is not entitled to recover the penalties sued for, and that the judgment of his Honor, *Judge Ward,* is correct.