### J. H. JOHNSON v. J. J. CARSON.

(Filed 5 March, 1913.)

**Penalty Statutes—Fertilizers—Qui Tam Actions—Cotton-seed Meal
—Branded and Tagged—Intent—"Removal"—User—Seller—In-
terpretation of Statutes.**

Statutes should be construed to ascertain their intent and to
remedy the evil, and in this *qui tam* action to recover the penalty
prescribed by Revisal, sec. 3956, for the unlawful removing of
cotton-seed meal in unbranded bags and without tags, as re-
quired by section 3957, these sections, construed with section

3960, are held to mean that such removal relates to those who "sell or offer for sale any cotton-seed meal without having the proper tags attached," and not the farmer, for whose protection the statutes were enacted, so as to make him liable for removing from the depot bags of cotton-seed meal, to be used under his crops, and which had been bought by and shipped to him for that purpose.

APPEAL by plaintiff from *Cline, J.,* at September Term, 1912, of PITT.

*H. A. Gilliam and L. I. Moore for plaintiff.*
*Harry Skinner and T. J. Jarvis for defendant.*

CLARK, C. J. This is an action for the recovery of a penalty of $10 per sack for the removal by the defendant of 196 bags of cotton-seed meal shipped by the Southern Cotton Oil Company to the defendant at Bethel, N. C., and removed by him therefrom to his farm and used thereon, in alleged violation of Revisal, 3956. The shippers of this identical cotton-seed meal were subjected to the payment of said penalty in *Carson v. Bunting,* 154 N. C., 530. This is a *qui tam* action for the same penalty against the purchaser.

The cotton-seed meal was shipped 8 January, 1909, by the Southern Cotton Oil Company from its factory at Conetoe, N. C., to the defendant at Bethel, N. C., to be used by him as fertilizer. None of the bags had branded thereon or had attached to them any labels, stamps, or tags containing the data required by Revisal, 3957. By consent, a jury trial having been waived, the judge found the facts, which are that the cotton-seed meal was removed from the station at Bethel by the defendant to his farm, and that he did not at that time have knowledge that the required data was not stamped or labeled thereon, and that the fertilizer was subsequently used on the defendant's farm for agricultural purposes.

Upon these facts, the court correctly held as a matter of law that the defendant was not liable to the penalty sued for. The question presented is simply whether a farmer who buys fertilizer, not for sale, but for use on his own crops, is subject to the penalty prescribed in Revisal, 3960, if he takes it home, or removes it from the station to his farm.

---

JOHNSON *v.* CARSON.

---

Revisal, 3957, makes cotton-seed meal sold for use as fertilizer subject to inspection tax unless sold to manufacturers to be used in manufacturing fertilizers, and adds: "All cotton-seed meal offered for sale shall have plainly branded," etc. "No person or persons, firm or corporation shall offer for sale any cotton-seed meal except as provided in preceding section." Revisal, 3958. Revisal, 3960, provides: "Any person or persons, firm or corporation who shall sell or offer for sale any cotton-seed meal without having the proper tags attached thereto, etc., shall be liable to a tax of $10 for each separate bag, barrel, or other package sold or offered for sale or removed, to be recovered by any person who may sue for the same, and all cotton-seed meal so sold or offered for sale shall be subject to seizure."

It is clear, from these sections, that the penalty applies to the manufacturer or any one, either as principal or agent, who sells or offers to sell, or removes, and that the word "remove" does not apply to the purchaser who received the fertilizer not for sale, but for use, and when the only removal by him is taking the fertilizer from the railroad station and then distributing the same under his crops.

In *Carson v. Bunting,* 154 N. C., 530, *Walker, J.,* in his able concurring opinion says: "The idea being to protect the unwary farmer against the purchase of spurious articles, to shield him from the imposition and fraudulent practices and devices of the wicked and designing manufacturer." The word "removal" applies only to persons who shall "sell or offer for sale." If the act gave a penalty against the purchaser who buys for his own use, it would not be a protection to the farmers, as intended, but a snare and a delusion, and would subject them and their hands and tenants to a penalty for being the victims of the fraud or violation of law committed by the sellers.

Among the many well-settled rules for the interpretation of statutes are that we must consider the intent of a statute and the evil to be remedied, and to so construe it as to execute its purpose, which will be drawn from the terms of the statute and consideration of the context. It cannot be denied that by this test the intent of the statute was to protect and not to punish the purchaser, but to make the manufacturer or seller liable for

noncompliance with the statutory requirement to furnish data attached to each barrel, or bag, or package, giving the constituents of the fertilizer. Revisal, 3960, provides that any one "who shall sell or offer for sale" any cotton-seed meal without having the proper tags attached thereto, etc., shall be liable for a tax of $10 for each separate bag, barrel, or other package sold, offered for sale, or removed, to be recovered by any person who may sue for the same. The penalty is thus restricted to those who "shall sell or offer for sale" such fertilizer without having complied with the terms of the statute.

So plain a proposition hardly needs any citation of authority. Many cases are cited in Black Interpretation Laws, sec. 29. An ancient case, exactly in point, is given by *Puffendorf De Jure Nat. L.,* 5, c. 12, s. 8, who mentions a law of Bologna, which enacted that "whoever drew blood in the streets should be punished with the utmost severity." It was held thereunder that this law did not apply where a surgeon bled a man who had fallen down in the street in a fit. The plaintiff here seems to go further, and seeks to hold liable not the surgeon, but the purchaser whose blood has been drawn by the shipment to him of fertilizers not safeguarded and guaranteed as to its constituents in the manner required by the statute.

The court below finds as a fact that the defendant did not know at the time of the removal of the fertilizer from his station to his farm that the fertilizer had not been properly tagged. But if he had, under the very terms, as well as the intent, of Revisal, 3960, such "removal" by him would not have made him subject to the penalty unless the cotton-seed meal was "sold or offered for sale" by him without having the proper tag attached thereto.

The plaintiff rests his case, indeed, upon the following language in Revisal, 3956, which provides: "Every merchant, trader, manufacturer or agent who shall sell or offer for sale any commercial fertilizer or fertilizer material without having attached thereto such labels, statements, and tags as are required by law, or who shall use the required tags the second time to avoid the payment of the tonnage charge, and *every person who shall remove any such fertilizer,* shall be liable to a penalty of

$10 for each separate bag, barrel, or package sold or offered for sale *or removed,* to be recovered by any person who may sue for the same"; and upon similar language in 3960. But it is apparent from what we have said as to the context and purpose of the act that the words in italics refer to "any *such* person" who for the purpose of selling or offering for sale, or to evade the inspection tax, shall remove the fertilizer or cotton-seed meal; as, for instance, by sending it from the factory for shipment, or to another point, to be offered for sale or sold.

No error.