## STATE v. A. W. FAULKNER.

(Filed 6 March, 1918.)

**1. Appeal and Error—Certiorari—Correcting Case.**

A certiorari will not issue for correcting the record of a criminal case sent up on appeal agreed to by the solicitor, when the statement of the trial judge is only that the evidence was incorrectly stated therein, with indication that he would not be able to either recollect the evidence or correct it, and in the absence of allegation of misconduct on the part of the solicitor; especially when it appears that the defendant was a man of good character and the judge has stated he was not to blame for the offense charged.

**2. Criminal Law—Cottonseed Meal—"Sale"—Broker—Statutes.**

One who sells cottonseed meal for the manufacturer, upon commission, who neither handles nor sees the seed but has it shipped direct to the purchaser, is not a seller thereof within the intent and meaning of Revisal, sec. 3814, making it a misdemeanor to sell such seed contrary to the requirements of section 3958, that it shall have not less than $7\frac{1}{2}$ per cent of ammonia; and when it is shown upon the trial that he received the order and sent it to the manufacturer, stating that it should have not less than the required amount of ammonia and the proper N. C. tags, he is not guilty when, in no default himself, the manufacturer ships the seed in violation of the statutes. *Johnson v. Carson,* 161 N. C., 373, construing section 3960, cited and applied.

APPEAL by defendant from *Allen, J.,* at November Term, 1917, of WAYNE.

This in an indictment under section 3814 of the Revisal, the charge being that the defendant sold cotton and meal containing less than $7\frac{1}{2}$ per cent of ammonia.

The evidence, which is agreed upon, is in substance as follows: That the defendant A. W. Faulkner, who is a duly licensed broker in Goldsboro, Wayne County, North Carolina, sold, as broker, to J. R. Jones, of the firm of Jones & Kornegay, on 10 October, 1916, 60 tons of prime cottonseed meal, $7\frac{1}{2}$ per cent North Carolina tags. That the said J. R. Jones had bought for a considerable length of time other merchandise from the defendant A. W. Faulkner, and well knew that he was a merchandise broker and that the defendant while in Mount Olive had a conversation with J. R. Jones, of the firm of Jones & Kornegay, and stated to the said Jones that he thought he could give him a good price on cottonseed meal; that said Jones stated to him that he would give so much per ton for prime $7\frac{1}{2}$ per cent cottonseed meal, North Carolina tags, and the defendant Faulkner told him that he would wire and see if he could secure this price; that the defendant Faulkner did wire to W. Newton Smith, of Baltimore, Md., submitting to him the offer made by the said John R. Jones, which offer was accepted by the said W. Newton

Smith, and the defendant notified Jones & Kornegay of the confirmation of the order and mailed to Jones & Kornegay sales ticket for the goods in the following words and figures, to wit:

W. NEWTON SMITH, *Baltimore, Md.*   Goldsboro, N. C., Oct. 10, '16.

Book Jones Kornegay Co., Mt. Olive, N. C., 60 tons 7½ per cent C. S. Meal, N. C. tags. Nov., Dec., Jany. shipts.

Sold by phone.   Confirmed, A. W. FAULKNER.

The defendant, acting purely as a broker in bringing the parties together upon this trade, and that the defendant had no meal of his own nor any interest in this meal, but simply received a brokerage of 25 cents per ton for negotiating the sale. That after the sale was made and before the meal reached the said Jones & Kornegay the said W. Newton Smith, of Baltimore, Md., sent North Carolina tags, mentioned in the order to Jones & Kornegay by parcel post, the tags to be attached to the meal by the said Jones & Kornegay upon its arrival. That after Jones & Kornegay had received the meal and after a portion of meal had been sold by them it was analyzed by the State Chemist and found to contain less than 7½ per cent ammonia, varying in analysis from the small per cent under 7½ to a considerable extent under 7½ per cent. It is admitted that the defendant did not have the meal in his possession, or that he had ever seen the meal, and that the same was not billed to the defendant, but shipped and billed direct to Jones & Kornegay.

It is further admitted that the defendant is a man of good character and has been engaged in the brokerage business for a number of years.

His Honor instructed the jury to find the defendant guilty, if they believed the evidence and the defendant excepted.

There was a verdict of guilty, and from a judgment imposing a fine of $25 and the costs, the defendant appealed.

*Attorney-General Manning and Assistant Attorney-General Sykes for the State.*

*J. L. Barham for defendant.*

ALLEN, J. The Attorney-General, representing the State, concedes that the defendant is entitled to a new trial on the case on appeal sent to this Court, to which the solicitor has agreed, but he contends that the case has not been correctly stated, and he moves for a *certiorari* directed to the judge before whom the action was tried to settle the case.

In support of the action he files a letter from the judge stating that he does not think the statement of the evidence is correct, but he says in one place: "I cannot remember the facts fully," and in another, speaking of the evidence, "I cannot remember it."

He does not state that he would change the case if it was referred to him, but suggests that the notes of the stenographer be sent to this court, and a letter from the stenographer is filed in which she says that her notebook has been lost in a change of offices and that she cannot reproduce the evidence.

In this uncertainty, and in the absence of any allegation of misconduct on the part of the solicitor, the difference between him and the judge being one of recollection, we are not inclined to grant the motion of the State, if we have the power to do so, and especially so when it is stated in the case on appeal that the defendant is a man of good character and by the judge in his letter that the defendant was himself imposed on in the sale of the meal by the seller.

In *Barbee v. Justice,* 138 N. C., 22, the Court said that "It is only when the judge has settled the case, in the exercise of his proper jurisdiction, that upon affidavit of error therein and a letter from the judge that he will correct it if given the opportunity, the Court will give him such opportunity," and in *S. v. Chaffin,* 125 N. C., 664, "The case on appeal was agreed on (as in this case) by the solicitor and the counsel for the defendant. Such being the case, there is no ground for action by the judge, *S. v. Cameron,* 121 N. C., 572; The Code, sec. 1234; nor for a *certiorari* to correct the case by the judge's notes of the evidence on file, nor to permit the judge to correct the case."

The motion for a *certiorari* is therefore denied, and, dealing with the case at it appears in the record, we agree with the Attorney-General that there is error in the charge to the jury, and that a new trial must be ordered.

The charge in the indictment is the sale of cottonseed meal containing less than 7½ per cent of ammonia.

The Revisal, sec. 3958, forbids the sale of meal with less than 7½ per cent ammonia, and section 3814 provides that, "If any person shall sell or offer for sale any cottonseed meal which has not been inspected and branded as required by law, or shall sell any cottonseed meal containing a less quantity of ammonia than is authorized by law, or shall violate any regulation or rule made by the State Board of Agriculture regulating the sale, inspection, branding, or tagging of cottonseed meal, he shall be guilty of a misdemeanor."

The purpose of these statutes and of those following section 3958 imposing penalties, is to promote agriculture by insuring the sale of fertilizers containing plant food in certain proportions and of sufficient quality and quantity and to protect those who cultivate the soil from imposition and fraud.

The same persons who are forbidden to sell or to offer for sale, and upon whom penalties are imposed by section 3958 *et seq.,* are made in-

dictable under section 3814, and it has been held in *Johnson v. Carson,* 161 N. C., 373, under section 3960, which forbids any person from selling or offering to sell or *removing* any fertilizer not having the tags attached required by the statute, that it does not include a farmer who bought and removed such fertilizers and that the penalties apply "to the manufacturer or any one, either as principal or agent, who sells or offers to sell or removes."

The fact that neither knowledge of the defect nor an intent to defraud is made an element in the criminal offense is strong reason for confining the statute to the manufacturer, who should be held to have knowledge of the composition of the fertilizer he offers for sale, and to the owner, not a manufacturer, and his agent with authority to sell, who have the opportunity to test the fertilizer before they sell it.

A sale imports a transfer of title, and one who sells transfers the title. It is defined to be "the transfer of the property in a thing for a price." 35 Cyc., 25.

The defendant, if the evidence is believed, had neither title nor possession, nor did he have any authority to sell and transfer the title. He was a mere broker, a negotiator between the parties, who, as said by *Clark, C. J.,* in *Latham v. Fields,* 160 N. C., 337, "does not have possession, disposal, and control of property."

A full and elaborate note to *Walker v. Osgood,* 93 A. D., 171 *et seq.,* collects the authorities on the duties and liabilities of a broker, and shows that he does not purport to sell and transfer the title, that he has no authority to collect the purchase price, and that his duties consist in bringing the minds of the vendor and the vendee to one agreement.

*People v. Morse,* 131 Mich., 68, is in point. In that case the defendant was indicted under the pure-food law, and the evidence tended to prove that the defendant took an order for pure pepper to be shipped by a wholesale dealer at Chicago to a dealer at Muskegon, and that the pepper when shipped was not pure. The Supreme Court held that the defendant was not guilty, and said: "The transaction in which the order was taken did not involve an immediate delivery of pepper, then and there present. It is not shown that the sample, if there was one, was the same as the pepper subsequently sent, or that it was in the least impure. If it be conceded that the agent acted in good faith—and we understand that it is not questioned—he took an order for pure goods, and in doing that certainly committed no offense. It is now urged that the exigencies of the enforcement of this law are such that we should hold that this innocent and lawful action may be made a crime by the subsequent act of the principal, either intentional or inadvertent, in departing from instead of performing the contract which his agent had innocently made. We think this is not so, and we are

also of the opinion that this does not necessarily do violence to section 17. This transaction as an entirety may have been a sale of impure pepper, under the statute, as to the principal, and not as to the agent. If the order had been taken with knowledge on the part of the agent of a practice to send impure pepper on such orders, a different question would be presented."

Also see *Hall Baker Grain Co. v. U. S.,* 198 Fed., 614.

In this case the evidence shows that the defendant was a broker, that he had neither title nor possession, that he had never seen the cotton-seed meal, that the order he transmitted was for meal containing 7½ per cent ammonia, and that the violation of the statute was due to the act of the seller in Baltimore in failing to ship according to the terms of the order, and that this was without the knowledge of the defendant.

If this evidence is true, and it does not seem to be contradicted, the defendant is not guilty.

New trial.